# United States Court of Appeals for the Federal Circuit

2006-7023

MARIA R. RODRIGUEZ,

Claimant-Appellee,

v.

JAMES B. PEAKE, M.D., Secretary of Veterans Affairs,

Respondent-Appellant.

Kenneth M. Carpenter, Carpenter, Chartered, Topeka, Kansas, argued for claimant-appellee.

Kyle E. Chadwick, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for the respondent-appellent. With him on the brief was Peter D. Keisler, Acting Attorney General. Of counsel was Todd M. Hughes. Of counsel on the brief was Joshua S. Blume, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: The United States Court of Appeals for Veterans Claims

Chief Judge Jonathan R. Steinberg

# United States Court of Appeals for the Federal Circuit

2006-7023

MARIA R. RODRIGUEZ,

Claimant-Appellee.

v.

JAMES B. PEAKE, M.D., Secretary of Veterans Affairs,

Respondent-Appellant.

Appeal from the United States Court of Appeals for Veterans Claims in 03-1276, Judge Jonathan R. Steinberg.

_____

DECIDED:  January 7, 2008

_____


Before BRYSON, <u>Circuit Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and KEELEY,[*] <u>Chief District Judge</u>.

KEELEY, <u>Chief District Judge</u>.

James B. Peake, M.D., Secretary of Veterans Affairs ("the Secretary"), appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court"), permitting a survivor of a deceased veteran to proceed with a claim for dependency and indemnity compensation ("DIC"). <u>Rodriguez v. Nicholson</u>, 19 Vet. App. 275 (2005).  That decision overturned a ruling by the Board of Veterans' Appeals ("the Board") and held that application of 38 C.F.R. § 3.22, as amended in January 2000, to a DIC claim pending prior to the amendment, took away a substantial right.  The Veterans

---

[*]        Honorable Irene M. Keeley, Chief District Judge, United States District Court for the Northern District of West Virginia, sitting by designation.

Court held that the Board's application of amended § 3.22 to Appellee Maria R. Rodriguez's ("Rodriguez") case had an unlawful "retroactive effect." Because amended § 3.22 does not have an unlawful "retroactive effect," we reverse.

## I. BACKGROUND

As we have done in similar cases, we find it useful to briefly review the statutes governing the award of DIC benefits to survivors of deceased veterans before discussing the facts of this particular case.

DIC is a monthly benefit paid to certain survivors, such as a spouse, of certain deceased veterans. 38 U.S.C. § 1311 (2000). A veteran's surviving spouse may receive DIC benefits if the veteran died from a service-connected disability. 38 U.S.C. § 1310 (2000). A veteran dies from a "service-connected" disability when the disability was a principal or a contributory cause of the death. 38 C.F.R. § 3.312(a) (1989).

Alternatively, if a veteran's death is not "service-connected," 38 U.S.C. § 1318 provides that a surviving spouse may still receive DIC benefits if the veteran had received, or was entitled to receive, compensation at the time of his or her death for a service-connected disability that had been continuously rated totally (100%) disabling for a period of 10 or more years immediately preceding death. 38 U.S.C. § 1318(b) (2000).[1]

In 1990, the General Counsel of the United States Department of Veterans Affairs ("the Department") announced an interpretation of § 1318 that precluded

---

[1] The language of § 1318 at issue in this case reads: "A deceased veteran referred to in subsection (a) of this section is a veteran who dies, not as the result of the veteran's own willful misconduct, and who was in receipt of or entitled to receive . . . compensation at the time of death for a service-connected disability rated totally disabling if — (1) the disability was continuously rated totally disabling for a period of 10 or more years immediately preceding death . . . ." 38 U.S.C. § 1318(b).

survivors of veterans from bringing claims for DIC benefits using a "hypothetical entitlement" approach. VA Gen. Coun. Prec. 68-90 (July 18, 1990). Under this approach, if the survivor of a deceased veteran can prove that a veteran would have been entitled to receive compensation for a 100% disabling service-connected disability for ten years prior to death, then the survivor may claim DIC benefits under § 1318, even though the deceased veteran did not actually receive such compensation. A survivor could meet this evidentiary burden by showing, for example, that (1) the veteran actually was 100% disabled for ten or more years prior to death, but did not file a claim and, therefore, did not receive compensation for that period of time, or (2) the veteran actually did file a claim, but the claim was improperly denied by the Board.

With this background, we now turn to the facts of the case at hand.

Rodriguez is the widow of Feliz Estremremera-Acevedo, a veteran who served three years with the Army National Guard, and then served on active duty in the U.S. Army for twenty years. Mr. Estremremera-Acevedo concluded his service in 1974. In 1975, he applied to the Department for a determination of "service-connection" for a variety of physical ailments. The Department determined that three of his conditions, including diabetes mellitus, were service-related and listed them as 10% disabling.

By 1991, Mr. Estremremera-Acevedo's diabetes had worsened and, as a result, his left leg was amputated below the knee. In 1992, the Veteran Affairs Regional Office ("VARO") raised Mr. Estremremera-Acevedo's disability rating to 100%, effective from April 22, 1991. Two years later, the VARO ruled on two additional claims by Mr. Estremremera-Acevedo. First, the VARO declined to increase his disability ratings for various other ailments, and second, it refused to assign an earlier effective date for the

100% disability rating for his diabetes. Mr. Estremremera-Acevedo ultimately died from complications associated with liver cancer in August 1996.

In September 1996, Rodriguez filed a claim seeking DIC benefits under both 38 U.S.C. § 1310 and § 1318. At that time, we had not yet interpreted the "entitled to receive" language of § 1318. For approximately six years prior to the time Rodriguez filed her claim, however, the Department had been refusing to recognize claims using the "hypothetical entitlement" approach.

In November 1996, the VARO found that Mr. Estremremera-Acevedo's death was not service-related, and that he had only been listed as 100% disabled for five years prior to his death. It thus concluded that Rodriguez had failed to meet either of the conditions required to be eligible for DIC. Rodriguez appealed these findings to the Board.

While Rodriguez's appeal was pending before the Board, the Veterans Court issued several decisions interpreting § 1318 and its implementing regulation, § 3.22. These decisions interpreted the "entitled to receive" language to permit a DIC claimant to pursue a "hypothetical entitlement" approach. Green v. Brown, 10 Vet. App. 111 (1997); Carpenter v. West, 11 Vet. App. 140 (1998); Wingo v. West, 11 Vet. App. 307 (1998).

In Green, the Veterans Court held that a surviving spouse could use any evidence available at the time of applying for DIC to "attempt to demonstrate that the veteran hypothetically would have been entitled to receive a different decision" on a prior benefits claim, and that the "different decision" would have resulted in the veteran's receiving a 100% disability rating for at least ten years prior to death. 10 Vet. App. at

118; accord Carpenter, 11 Vet. App. at 146-47. Similarly, in Wingo, the Veterans Court held that a surviving spouse could argue "hypothetical entitlement" where the Department of Defense had rated a veteran 100% disabled more than ten years prior to his death, but the veteran had only applied for benefits one month before his death. 11 Vet. App. at 309-12.

In July 1998, the Board remanded Rodriguez's claims for additional development and re-adjudication. In January 2000, the Secretary promulgated a final rule amending § 3.22 to preclude reading a "hypothetical entitlement" approach into § 1318. See 65 Fed. Reg. 3388 (Jan. 21, 2000). The amendment defined "entitled to receive" to mean that the deceased veteran had actually been rated 100% disabled for at least ten years prior to death, but, for one of several enumerated reasons,[2] was not receiving compensation. 38 C.F.R. § 3.22.[3]

---

[2]    The amended text of 38 C.F.R. § 3.22 reads as follows:
 (a) Even though a veteran died of non-service-connected causes, VA will pay death benefits to the surviving spouse or children in the same manner as if the veteran's death were service-connected, if:
     (1) The veteran's death was not the result of his or her own willful misconduct, and
     (2) At the time of death, the veteran was receiving, or was entitled to receive, compensation for service-connected disability that was:
     (i) Rated by VA as totally disabling for a continuous period of at least 10 years immediately preceding death; or
     (ii) Rated by VA as totally disabling continuously since the veteran's release from active duty and for at least 5 years immediately preceding death.
 (b) For purposes of this section, "entitled to receive" means that at the time of death, the veteran had service-connected disability rated totally disabling by VA but was not receiving compensation because:
     (1) VA was paying the compensation to the veteran's dependents;
     (2) VA was withholding the compensation under authority of 38 U.S.C. § 5314 to offset an indebtedness of the veteran;
     (3) The veteran had applied for compensation but had not received total disability compensation due solely to clear and unmistakable error in a VA

In October 2002, the VARO again denied Rodriguez's claims, and in December 2002, the Board affirmed the VARO's decision that Mr. Estremremera-Acevedo's death was not related to a service-connected disability. The Board deferred consideration of Rodriguez's § 1318 claim, however, pursuant to a stay issued by this Court in National Organization of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs, 260 F.3d 1365, 1380 (Fed. Cir. 2001) ("NOVA I").

In NOVA I, we held that the phrase "entitled to receive," as used in § 1318, is ambiguous. Id. at 1377. We deferred deciding whether the Secretary's 2000 amendment to § 3.22 was valid, however, in order to give the Department an opportunity to explain why it had interpreted the same phrase differently in another regulation.[4] Id. at 1380. In reaching this result, we agreed with the Department that the

decision concerning the issue of service connection, disability evaluation, or effective date;
(4) The veteran had not waived retired or retirement pay in order to receive compensation;
(5) VA was withholding payments under the provisions of 10 U.S.C. §1174(h)(2);
(6) VA was withholding payments because the veteran's whereabouts was unknown, but the veteran was otherwise entitled to continued payments based on a total service-connected disability rating; or
(7) VA was withholding payments under 38 U.S.C. § 5308 but determines that benefits were payable under 38 U.S.C. § 5309.

[3]    Because Mr. Estremremera-Acevedo had not been rated 100% disabled for ten years prior to his death, none of the enumerated exceptions under this amendment apply to Rodriguez's claim.

[4]    In a third NOVA decision, we summarized the issue as follows: "Since both sections 1311(a)(2) and 1318 have identical 'entitled to receive' language, it appeared that both should be interpreted in the same way. It was also clear that a veteran was 'entitled to receive' payments within the meaning of the statute if CUE [clear and unmistakable error] had occurred, but it was unclear whether the discovery of new and material evidence could lead to a finding that the 'entitled to receive' requirement was met." Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs, 476 F.3d 872, 874 (Fed. Cir. 2007).

amendment to § 3.22 was interpretive rather than substantive, which alleviated the notice and comment period requirements that otherwise would have attached under the Administrative Procedures Act. Id. at 1377.

In January 2003, in National Organization of Veterans' Advocates, Inc., v. Secretary of Veterans Affairs, 314 F.3d 1373, 1380 (Fed. Cir. 2003) ("NOVA II"), we found that, in attempting to comply with NOVA I, the Department had decided to continue to interpret the language of § 3.22 as "excluding new claims filed posthumously by a veteran's survivor, that is, claims where no claim had been filed during the veteran's life or the claim had been denied and was not subject to reopening." Finding it reasonable, we deferred to the Department's interpretation, thus upholding the Department's decision to interpret "entitled to receive" as barring the "hypothetical entitlement" approach. Id. We remanded the case on the ground that the Department had failed to bring its interpretation of § 1311 into conformity with its interpretation of § 1318, but we lifted the stay on claims such as Rodriguez's § 1318 claim. Id. at 1381-82.

In June 2003, the Board affirmed the VARO's decision to deny Rodriguez's § 1318 DIC claim. In making this decision, the Board relied on the amended version of § 3.22 that barred a claimant's use of the "hypothetical entitlement" approach. On a separate issue, the Board also found that the Department had complied with its notice obligations under the Veterans Claims Assistance Act of 2000 ("VCAA"). The VCAA requires that the Department advise claimants of any information that the claimant will need to provide the Department in order to substantiate the claim. Pub. L. No. 106-475,

§ 3(a), 114 Stat. 2096, 2096-97 (2000). The Department must also make reasonable efforts to assist the claimant in obtaining relevant records. Id.

Rodriguez appealed the Board's decision to the Veterans Court, which in August 2005 reversed the Board's decision and remanded the case to the Board. In doing so, the Veterans Court held that the Board had acted unlawfully when it retroactively applied the amended version of § 3.22 to Rodriguez's DIC claim, because the amendment to § 3.22 had removed a substantive right that existed at the time the claim was filed. The Veterans Court further held that the Board should analyze Rodriguez's claim under Green, Carpenter, and Wingo, the line of cases that permit a DIC claimant to allege "hypothetical entitlement" when applying for benefits.

On the VCAA issue, the Veterans Court ruled that the Department had not met its duty under the VCAA of advising Rodriguez of the evidence necessary to substantiate her DIC claim under § 1318, using the hypothetical entitlement theory. The Veterans Court found that such failure would have the "natural effect" of prejudicing Rodriguez, which therefore shifted the burden to the Department to show that its failure to advise Rodriguez had not actually caused her prejudice. Ultimately, the Veterans Court found that the Department had failed to establish that it had no documents under its control relevant to Rodriguez's § 1318 claim, and, therefore, had not met its burden.

This appeal followed. We have jurisdiction pursuant to 38 U.S.C. § 7292(d).

## II.    DISCUSSION

### A.

We may review a decision by the Veterans Court with respect to the validity of "any statute or regulation . . . or any interpretation thereof (other than a determination as

to a factual matter) that was relied on by the [Veterans] Court in making the decision." 38 U.S.C. § 7292(a) (2000).  In doing so, we must decide "all relevant questions of law" and set aside any regulation or interpretation relied on by the Veterans Court that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law."  Id. at (d)(1).

We review the Veterans Court's legal determinations de novo.  See Dittrich v. West, 163 F.3d 1349, 1351 (Fed. Cir. 1998) (citing Prenzler v. Derwinski, 928 F.2d 392, 393 (Fed. Cir. 1991)).  Therefore, we review, without deference, the Veterans Court's legal determinations regarding the validity of a law or any interpretation thereof. Bingham v. Nicholson, 421 F.3d 1346, 1348 (Fed. Cir. 2005).  We may not review factual determinations or the application of law to fact.  38 U.S.C. § 7292(d)(2).

B.

The Secretary argues that applying amended § 3.22 to Rodriguez's DIC claim did not create an unlawful retroactive effect because it did not retrospectively diminish any of her rights to benefits.  The Secretary alleges that the Veterans Court erred by not using the three-part test outlined by this Court in Princess Cruises v. United States, 397 F.3d 1358 (Fed. Cir. 2005).  According to the Secretary, under the Princess Cruises test, the amended regulation does not have an impermissible retroactive effect.

In Landgraf v. USI Film Products, 511 U.S. 244, 246, 265 (1994), the seminal case regarding the retroactive application of a statute, the United States Supreme Court recognized that "retroactivity is not favored in the law" and "the presumption against

retroactive legislation is deeply rooted in our jurisprudence." At the same time, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." Id. at 269 (internal citations omitted). Therefore, in analyzing whether a particular statute should be applied to a case that originated before the statute was passed, a court "must ask whether the new provision attaches new legal consequences to events completed before its enactment." Id. at 269-70.

To determine whether the application of a new statute would have retroactive effect, the Supreme Court has suggested that "the familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance." Id. at 270. In addition, courts should consider three factors, specifically (1) whether it would impair rights possessed by a party when he acted, (2) whether it would increase a party's liability for past conduct, or (3) whether it would impose new duties with respect to already completed transactions. Id. at 280. If the statute is found to have a retroactive effect, then "our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." Id.

In Princess Cruises, we applied the holding in Landgraf to retroactive application of rules and regulations and recognized that "Landgraf explicitly requires the court to consider 'the nature and extent of the change in the law,' not merely whether a change has occurred." Id. at 1362-63 (emphasis in original) (quoting Landgraf, 511 U.S. at 270). To that end, we created a three-part test encompassing the factors laid out in Landgraf: (1) "the nature and extent of the change of the law;" (2) "the degree of connection between the operation of the new rule and a relevant past event;" and (3) "familiar

considerations of fair notice, reasonable reliance, and settled expectations." Id. (quoting Landgraf, 511 U.S. at 270). If, under this test, a rule or regulation appears to have a retroactive effect, then the rule or regulation cannot be applied to cases pending at the time of its promulgation.

We do not know why the Veterans Court did not apply the Princess Cruises test to the facts here, but we agree with the Secretary that application of the test is appropriate in this case. The Veterans Court issued its decision in August 2005, after Princess Cruises was decided in February 2005; thus the test was available to the Veterans Court at the time of its ruling. We therefore proceed to analyze whether § 3.22 has a retroactive effect under the three-part Princess Cruises test.

### 1. The Nature and Extent of the Change of the Law

In its 2005 decision, the Veterans Court found that the nature and extent of the change in the law was substantial. We agree with the Veterans Court that, during the years after Green was issued but before NOVA I stayed the cases, Rodriguez and others like her had a cognizable claim for DIC benefits under the "hypothetical entitlement" approach. Consequently, many claimants who would have had a claim for DIC benefits under the Green interpretation of § 1318 no longer have a claim due to the amendment of § 3.22. Our analysis, however, cannot end there.

The Secretary asserts that the 2000 amendment to § 3.22 was neither an unforeseeable nor a fundamental change in law. Essentially, the Secretary argues that, from 1990 until the Veterans Court issued its opinion in Green in 1997, the Department interpreted both § 1318 and its implementing regulation, § 3.22, as precluding the "hypothetical entitlement" approach. In support of this, the Secretary points out that the

General Counsel for the Department officially announced this interpretation in 1990. Then, when the Veterans Court's decisions in <u>Green</u> and its progeny breathed life into the "hypothetical entitlement" theory, the Secretary responded by amending § 3.22 to clarify that § 1318 could not be read to allow "hypothetical entitlement" claims.

In addition, the Secretary points to our decisions in <u>NOVA I</u> and <u>NOVA II</u>, holding that the language of § 1318 is ambiguous with regard to whether it allows "hypothetical entitlement" claims. The Secretary cites <u>National Cable & Telecommunications Association v. Brand X Internet Services</u>, 545 U.S. 967, 981-83 (2005), for the proposition that courts owe deference to an agency's reasonable regulatory interpretation of an ambiguous statute, even where a court has previously adopted a different interpretation. Because Rodriguez should have expected that deference would be shown to the Secretary's interpretation of the ambiguous "entitled to receive" language, the Secretary contends that the 2000 amendment cannot be considered a sharp or unexpected change in law.

According to Rodriguez, however, the 2000 amendment did not reaffirm the Department's settled position because the Department's position was only settled within the private recesses of its institutional mind. She argues that the pre-1997 interpretation of § 1318 was sufficiently unclear to allow the <u>Green</u> interpretation by the Veterans Court. Thus, the Department's position only became clear in 2000 when it amended § 3.22.

We agree with the Secretary that, from 1990 until <u>Green</u> was decided in 1997, the Department's interpretation of the "entitled to receive" language of §§ 1318 and 3.22

clearly precluded DIC claims using the "hypothetical entitlement" approach. While the statutory language remained ambiguous, the Secretary's interpretation did not.

Furthermore, in NOVA I, we found that § 3.22 was an "interpretive rule" rather than a "substantive rule." In reaching this conclusion, we cited Paralyzed Veterans of America v. West, 138 F.3d 1434 (Fed. Cir. 1998), for the proposition that "substantive rules are those that effect a change in existing law or policy or which affect individual rights and obligations." NOVA I, 260 F.3d at 1375 (internal quotations omitted). Interpretive rules, on the other hand, "clarify or explain existing law or regulation," and a rule may still be interpretive even though it has consequences for the rights of the parties. Id. at 1375-76. Thus, in NOVA I, we held that the amendment to § 3.22 did "no more than interpret the requirements of § 1318" and clarify the agency's earlier interpretation of that statute. Id. at 1377.

In keeping with our decision in NOVA I, we find here that, in amending § 3.22, the Secretary was merely clarifying the Department's earlier interpretation of § 1318, and, thus, the nature and extent of the change to the law was not substantial.

### 2. The Degree of Connection Between the Operation of the New Rule and a Relevant Past Event

In laying out the second factor of the Princess Cruises test, we stated that "not only must a new rule effect a significant change in the law, but this change must also have a significant connection with past events." 397 F.3d at 1365-66. In Princess Cruises, a new U.S. Customs rule required that certain data be collected, and created an evidentiary presumption to be applied when that data was not available. Id. at 1360. The cruise line had failed to collect the relevant data from trips that had occurred prior to the new rule. Id. This Court found that the new law had a significant connection with

past events, because the cruise line would never be able to rebut the evidentiary presumption established by the new rule. Id. at 1366.

Here, in contrast, § 3.22 does not meaningfully alter the consequences of relevant past events. The Secretary asserts that § 3.22 governs prospective entitlement to DIC, and that the application of a new provision that only authorizes or affects the propriety of prospective relief is not retroactive. See Landgraf, 511 U.S. at 275. In addition, the Secretary maintains that application of amended § 3.22 does not increase the evidentiary burden on Rodriguez, but merely narrows the scope of what is admissible. Finally, the Secretary argues that there is no relevant connection between the filing of Rodriguez's claim and the operation of § 3.22. He points out that Rodriguez filed her claim before Green and its progeny were decided, and that Rodriguez therefore could not have relied on the state of the law as it was after Green permitted the "hypothetical entitlement" approach.

Rodriguez asserts that the 2000 amendment of § 3.22 occurred solely as a result of Green and its progeny, and thus is connected to past events. Unlike the plaintiff in Princess Cruises, however, Rodriguez is unable to point to anything she would have done differently had she known the effect of the 2000 amendment when she filed her claim.

We agree with the Secretary that there is no significant connection to past events in this case. Rodriguez did not rely to her detriment on the prior state of the law. When she originally filed her claim, Green and its progeny had not yet been decided. Although Rodriguez was entitled to the benefit of those cases after they were issued, she did not act differently because of those cases. While those holdings may have

injected new hope into her case, merely continuing to pursue a claim does not constitute a significant connection to past events under the <u>Princess Cruises</u> test.[5]

### 3. Familiar Considerations of Fair Notice, Reasonable Reliance, and Settled Expectations

The third factor is whether the new rule upsets the familiar considerations of fair notice, reasonable reliance, and settled expectations.  We have yet to determine how much weight to give this factor.  In <u>Princess Cruises</u>, we noted that the Fourth Circuit has required that, in order to establish that a rule would have an impermissible retroactive effect, the party advancing that theory needs to show "objectively reasonable reliance," as opposed to subjective reliance, on the prior state of the law.  397 F.3d at 1366 (citing <u>Olatunji v. Ashcroft</u>, 387 F.3d 383, 396 (4th Cir. 2004)).  We also noted that the D.C. Circuit "appears to view 'the familiar considerations' as akin to a tiebreaker in close cases."  <u>Id.</u> (citing <u>Marrie v. SEC</u>, 374 F.3d 1196, 1207 (D.C. Cir. 2004)).  In <u>Princess Cruises</u>, however, we declined to decide how this Court would weigh this factor because we found that all three factors in <u>Princess Cruises</u> pointed in favor of finding a retroactive effect.  <u>Id.</u>  Similarly, here, because we find that all three factors favor the same position, we need not decide how much weight to afford the third prong of the test.

In applying the third factor, the Secretary emphasizes, as did we in <u>NOVA I</u>, that the phrase "entitled to receive" in § 1318(b) is ambiguous.  He argues that, because deference is owed to the Secretary's interpretation of ambiguous statutes, Rodriguez could not have reasonably relied on a construction of § 1318(b) by the Veterans Court

---

[5]       We need not decide in this case whether the result would be different if Rodriguez had filed her claim after <u>Green</u> was decided.

that conflicted with the VA's own announced interpretation.  Moreover, Rodriguez had fair notice of the Department's position, given that, before Green, the Department had consistently refused to recognize this interpretation, and, after Green, in both Carpenter and Wingo, the Department continued to oppose the Veterans Court's interpretation of the "hypothetical entitlement" approach.

Rodriguez claims she did not, in fact, have fair notice of the change in the law. She asserts that the amendment to § 3.22 was a new statement of law, not merely a clarification, and that, regardless of what the Department intended the interpretation of § 1318 to be, Green and its progeny represented a legitimate interpretation of the statute.  Had the Department's interpretation of the statute been as settled as the Secretary claims, Rodriguez concludes, the Veterans Court would never have decided the Green line of cases as it did.

Rodriguez correctly points out that the Department did not appeal Green, Carpenter, or Wingo to this Court, thereby potentially creating the impression that the Department was accepting those cases as valid interpretations of the law.  This possible impression, however, is insufficient to refute the Secretary's evidence that Rodriguez had fair notice of the Department's interpretation of the "entitled to receive" language. At the time Rodriguez filed her claim, the Department precluded the "hypothetical entitlement" approach.  After Green, the Secretary continued to oppose the approach in other cases, including Carpenter and Wingo.  Given this history, we agree that Rodriguez had fair notice of the Department's interpretation beginning the day she filed her claim.

Furthermore, Rodriguez can hardly argue that she had "settled expectations" regarding the law, given the multiple changes to the interpretation of the statute that occurred while her claim was pending. As for reasonable reliance, Rodriguez could not have relied on the "hypothetical entitlement" approach when she first filed her claim, because she filed her claim pre-<u>Green</u>. While Rodriguez may have relied on the Veterans Court's decisions after they were issued, she did not change her position based on such reliance. Thus, we find that the third <u>Princess Cruises</u> factor also weighs heavily in favor of the Secretary.

Because all three <u>Princess Cruises</u> factors indicate that applying the amended version of § 3.22 to Rodriguez's DIC claim does not create an unlawful retroactive effect, we reverse the decision of the Veterans Court on this issue. In doing so, we hold that 38 C.F.R. § 3.22, as amended by the Secretary in 2000, does not have a retroactive effect and may be applied to claims for DIC benefits filed by survivors before the amendment took effect.

C.

In briefing this appeal, the Secretary raised a second issue, questioning whether the Veterans Court had correctly interpreted the rule of prejudicial error when it found that the Department's failure to notify Rodriguez of information necessary to substantiate her claim pursuant to 38 C.F.R. § 3.159(b) was automatically prejudicial. During oral argument, however, the Secretary conceded that we settled this issue in

<u>Sanders v. Nicholson</u>, 487 F.3d 881 (Fed. Cir. 2007), and <u>Simmons v. Nicholson</u>, 487 F.3d 892 (Fed. Cir. 2007).[6] We therefore need not address it again here.

III.    CONCLUSION

For the reasons stated above, we reverse.

<u>REVERSED</u>.

---

[6] In <u>Sanders</u> and <u>Simmons</u>, we held that the VA's failure to provide notice pursuant to § 5103(a) automatically creates a presumption of prejudice, and thus the burden of persuasion shifts to the VA to show that the failure to provide information under § 5103(a) did not actually result in prejudicial error.