# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-3633

ALBERT J. THURLOW, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided September 12, 2018)

*April Donahower*, of Providence, Rhode Island, was on brief for the appellant.

*James M. Byrne,* General Counsel; *Mary Ann Flynn*, Chief Counsel; *Carolyn F. Washington*, Deputy Chief Counsel; and *Anthony D. Ortiz,* Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, *Chief Judge*, and PIETSCH and TOTH, *Judges*.

DAVIS, *Chief Judge*: U.S. Navy veteran Albert J. Thurlow appeals through counsel that portion of a September 22, 2016, Board of Veterans' Appeals decision that declined to refer his claim for an increased disability rating for a left shoulder condition for consideration of an extraschedular rating. A Judge of this Court referred this case to panel to determine whether the recently revised version of the Secretary's regulation governing extraschedular disability ratings may properly be applied to cases pending before this Court on the effective date of the revision. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990). Although Mr. Thurlow requested oral argument, the Court does not deem it necessary to the disposition of this appeal.

Several matters are not part of this appeal. The Board increased the schedular disability assigned for Mr. Thurlow's left shoulder condition. That determination is a favorable finding of fact that Mr. Thurlow does not challenge and the Court may not disturb. The Court therefore will not consider this matter. *See Pederson v. McDonald*, 27 Vet.App. 276, 283 (2015) (en banc); *Medrano v. Nicholson*, 21 Vet.App. 165 (2007). The Board also remanded the issue of entitlement to a rating of total disability on the basis of individual unemployability (TDIU). The Court is without jurisdiction to address this nonfinal matter. *See Breeden v. Principi*, 17 Vet.App. 478 (2004).

The Court concludes that the application of the Secretary's recently revised regulation, 38 C.F.R. § 3.321(b), will not result in an impermissible retroactive effect, and therefore, Mr. Thurlow's theory of entitlement for extraschedular consideration based on the collective impact of multiple service-connected disabilities has been eliminated. But because the Board committed prejudicial error in failing to obtain VA treatment records beyond 2013, the Court will set aside that part of the September 2016 Board decision that declined to refer Mr. Thurlow's left-shoulder disability for extraschedular consideration on an individual basis and remand that matter.

## I. BACKGROUND

Mr. Thurlow served honorably from August 1959 to December 1985. Record (R.) at 52. In 1964, he was involved in a motor vehicle accident in which his left shoulder became dislocated, although it did not require surgery at that time. R. at 1118.

The month after his discharge from service, Mr. Thurlow filed service-connection claims for multiple conditions, including the left shoulder condition. R. at 1117. A June 1986 rating decision granted service connection for residuals of the left shoulder injury, with a noncompensable rating. R. at 1119.

Mr. Thurlow's left shoulder condition degenerated over the intervening years, culminating in an arthroplasty (complete shoulder replacement) in March 2007. R. at 786. That same month Mr. Thurlow filed a claim for an increased disability rating for the left shoulder condition. R. at 866. In an August 2007 decision, a VA regional office (RO) assigned a 100% disability rating for a 13-month convalescent period following surgery, and after that, a 20% rating. *Id*.; *see* 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5051 (2018).

In November 2008, Mr. Thurlow filed a claim for an increased disability rating for his left shoulder condition, stating that the condition had progressively worsened, and additionally sought service connection for a bilateral hand condition. R. at 850. In February 2009, the RO maintained the 20% rating for the left shoulder condition and denied the claim for bilateral hand condition. R. at 778. Mr. Thurlow perfected an appeal to that decision. *See* R. at 777 (Notice of Disagreement), 687 (formal appeal).

In his appeal, Mr. Thurlow attributed the additional disability of his left shoulder to stress from a heavy cast that he wore following hand surgery. R. at 687. The record also reflects that Mr. Thurlow suffered a fall in 2009. R. at 609 (Apr. 2013 VA Disability Benefits Questionnaire). The Board ultimately remanded the matter for additional development in 2014. R. at 525-32.

Meanwhile, in March 2009, Mr. Thurlow underwent additional surgery to repair a rotator cuff tear over his arthroplasty. R. at 89. Following this second surgery, he filed a claim for an increased disability rating in May 2009, and it is this claim that is important for purposes of the analysis that follows. R. at 724. In October 2009, the RO granted another 100% rating for a convalescent period, followed by a return to a 20% rating from July 1, 2009. *Id.*

In the decision here on appeal, the Board found that Mr. Thurlow was entitled to the maximum 50% rating under DC 5051 for residuals of a shoulder replacement in the nondominant arm. R. at 11. The Board considered referral for extraschedular consideration, but found that "the rating criteria and presently assigned disability evaluation contemplates the level of the [v]eteran's respective disability." R. at 13. But the Board found that the record raised the issue of entitlement to TDIU. The Board therefore remanded the matter with instructions for VA to obtain any private treatment records since 2009 and any VA treatment records since 2013, to schedule the veteran for a VA social and industrial survey, and to readjudicate the TDIU claim. R. at 15-17.

## II.  THE PARTIES' ARGUMENTS

**A. Mr. Thurlow's initial brief challenged the Board's decision on extraschedular consideration, both on the basis of the left-shoulder disability alone and on the basis of the collective impact of his service-connected disabilities.**

Mr. Thurlow argued that the Board failed to consider entitlement to an extraschedular rating based on the collective impact of his multiple service-connected disabilities, an issue assertedly raised by the evidence of record.  He contended that, in addition to his left shoulder condition, his service-connected bilateral hand and lower back disabilities negatively affect his ability to work.

He further argued that the Board's discussion of referral for extraschedular consideration of his left shoulder disability by itself was inadequate in two respects.  He argued that the Board failed to discuss all his symptoms.  Specifically, Mr. Thurlow asserted that the Board referred to severe painful motion, limited motion and weakness, but did not discuss the fact that he was unable to perform any tasks over his head with his left arm, his inability to grasp groceries or tools, his excess fatigability, or the evidence that the hardware in his shoulder prosthesis was loosening.  He reasoned that it is impossible to discern how the Board compared these symptoms to the rating criteria when it did not offer a definition of the term "severe" in DC 5051.  Additionally, Mr.

Thurlow argued that the Board's decision on extraschedular consideration was premature in view of its finding that the record was insufficient to decide whether he is entitled to TDIU.

The Secretary argued for affirmance, contending that Mr. Thurlow failed to show how his cluster of symptoms amounts to an exceptional or unusual disability picture or demonstrates error in the Board's finding that his symptoms are contemplated by the schedular rating criteria. The Secretary further argued that Mr. Thurlow has failed to describe how his multiple service-connected disabilities interact to support an extraschedular rating based on the combined effect of those disabilities. Finally, the Secretary argued that because the Board found that the schedular rating contemplates the symptoms of his disability, the Board was not bound to consider the effect on employment. He pointed out that the Court has differentiated between TDIU and "marked interference with employment," and that the two conditions are not inextricably intertwined. *See* 38 C.F.R. § 3.321(b) (2018); *Brambley v. Principi*, 17 Vet.App. 20, 24 (2003); *Colayong v. West*, 12 Vet.App. 524, 537 (1999); *Kellar v. Brown*, 6 Vet.App. 157, 162 (1994). He therefore rejected Mr. Thurlow's argument that the record was insufficient to decide the matter of referral for extraschedular consideration.

## B. In the supplemental briefing, the parties disagreed whether applying the recently revised regulation on extraschedular rating to this case would result in an impermissible retroactive effect.

While this case was pending on appeal, the Secretary issued new regulations intended to abrogate the effect of *Johnson v. McDonald,* 762 F.3d 1362, 1366 (Fed. Cir. 2014), which held that the "plain language of § 3.321(b)(1) provides for referral for extra-schedular consideration based on the collective impact of multiple disabilities." The revised regulation eliminates the possibility of extraschedular consideration based on the collective impact of multiple service-connected disabilities. Section 3.321(b)(1), title 38, Code of Federal Regulations, now provides the following:

> Ratings shall be based, as far as practicable, upon the average impairments in earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice to the exceptional case where the schedular evaluation is inadequate to rate *a single service-connected disability*, the Director of Compensation Service or his or her delegate is authorized to approve on the basis of the criteria set forth in this paragraph (b), an extra-schedular evaluation commensurate with the average impairment of earning capacity due exclusively to the disability. The governing norm in these exceptional cases is a finding by

the Director of Compensation Service or delegate that application of the regular schedular standards is impractical because the disability is so exceptional or unusual due to such related factors as marked interference with employment or frequent periods of hospitalization.

82 Fed. Reg. 57,830, 57,835 (Dec. 8, 2017) (emphasis added). The Secretary intends the new rule to apply to cases pending before the Court on January 8, 2018, which would include Mr. Thurlow's case. *Id.* at 57,830. The Court sought supplemental briefing to address whether application of this revised regulation in this case would constitute an impermissible retroactive effect, and also whether the Board committed prejudicial error in failing to obtain post-2013 VA medical records.

Mr. Thurlow argued that the application of the revised regulation would have an impermissible retroactive effect because it extinguished a substantive right to extraschedular consideration based on the collective impact of multiple disabilities. He further argued that the Federal Circuit's analysis in *Princess Cruises, Inc. v. United States*, 397 F.3d 1358 (Fed. Cir. 2005), does not apply to regulations, such as § 3.321(b), in which the Secretary explicitly stated a retroactive intent. Mr. Thurlow also argued that the Board committed prejudicial error by not obtaining post-2013 VA medical records, which he contends may show symptoms beyond the contemplation of the maximum schedular rating for his left shoulder disability.

The Secretary responded that the application of the revised regulation would not have an impermissible retroactive effect. To support his position, the Secretary relied on the tripartite analysis of the Federal Circuit in *Princess Cruises*. Assuming that the Board failed to obtain post-2013 VA treatment records, however, the Secretary conceded that this omission would constitute a prejudicial error.

### III. ANALYSIS

**A. Although retroactivity is generally disfavored, application of the revised regulation in this case would not constitute an impermissible retroactive effect.**

As a general matter, retroactivity is not favored in the law. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Nevertheless, "in many situations, 'a court should apply the law in effect at the time it renders its decisions . . . even though that law was enacted after the events that gave rise to the suit.'" *Landgraf v. USI Film Prods.*, 511 U.S. 244, 273 (1994) (quoting *Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 711 (1974)).

Here, the Secretary's revision of § 3.321(b) effects a change that is unfavorable to veterans, so the Court must decide whether to defer to the Secretary's retroactive intent. In *Princess Cruises* the Federal Circuit established a tripartite test to determine whether a revised regulation can be applied to pending claims without having an impermissible retroactive effect. In assessing the retroactive application of a new or amended regulation, the Court must consider: (1) "the nature and extent of the change in the law," (2) "the degree of connection between the operation of the new rule and a relevant past event," and (3) "familiar considerations of fair play, reasonable reliance, and settled expectations." *Princess Cruises*, 397 F.3d at 1362-63.

Citing our decision in *Ervin v. Shinseki*, 24 Vet.App. 318 (2011), Mr. Thurlow argues that the *Princess Cruises* analysis does not apply to the revision of § 3.321(b) because the Secretary has explicitly stated an intent that the revised regulation apply to all cases pending when the revision was promulgated. Because this case falls outside the *Princess Cruises* framework, he reasons, the Secretary's attempt to apply the revised regulation to pending cases is impermissible because it is impairing a substantive right. Mr. Thurlow further points out that Congress has not explicitly granted the Secretary the power to issue retroactive regulations. He concludes that the Secretary's proposed effective date produces an impermissible retroactive effect. These arguments are not persuasive.

It is true that the *Ervin* Court stated that

> because we have determined that the Secretary's intent to give a general retroactive application to the regulation is clear, the three-part test prescribed in [*Princess Cruises*]—used for determining whether a regulation would have an impermissible retroactive effect if applied to cases pending at the time a regulation was promulgated—is not for application.

24 Vet.App. at 327. But as the Court has noted on several occasions, "general expressions must be taken in the context in which they were rendered." *Douglas v. Shinseki*, 23 Vet.App. 19, 25 (2009). Language quoted from a particular opinion "although universal in scope, does not constitute binding precedent beyond the facts there before the Court." *Lasovick v. Brown*, 6 Vet.App. 141, 149 (1994). *Ervin* considered a regulation that effected a change in the regulation pertaining to PTSD that was favorable to veterans. Because the appellants there *wanted* the regulatory change applied in their cases, the Court concluded that there was no need to evaluate the *Princess Cruises* factors. The Court had no occasion in *Ervin* to consider a situation, such as the present one, where a revised regulation specifies a temporal reach that is challenged by an appellant.

6

The Federal Circuit has noted that "[w]hen a statute on its face, applies retroactively, it is unnecessary for [the court] to rely on the factors identified by *Landgraf* and *Princess Cruises*." *Schaeffler Grp. USA, Inc. v. USITC*, 786 F.3d 1354, 1360 (Fed. Cir. 2015). The reasoning underlying that principal is that, within constitutional limitations, "Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness." *Landgraf*, 511 U.S. at 267.

But the Federal Circuit has not treated a regulation that the Secretary intends to be retroactive in the same manner as a statute issued by Congress. The whole point of the *Princess Cruises* analysis is to determine whether applying a change in a regulation to pending cases has an *impermissible* retroactive effect. *See, e.g.*, *Moffitt v. McDonald*, 776 F.3d 1359, 1364-65 (Fed. Cir. 2015). Therefore, regardless of whether the Secretary expresses an intent that a regulation be applied retroactivity, as in this instance, the *Princess Cruises* analysis is applicable.

In addition to *Princess Cruises*, the Federal Circuit has also addressed retroactive application of regulations in *Tarver v. Shinseki*, 557 F.3d 1371 (2009) and *Rodriguez v. Peake*, 511 F.3d 1147 (2008). In those cases, the Federal Circuit upheld retroactive application of new regulations less favorable to claimants where, as here, the amended regulation reinstated VA's earlier regulatory interpretation. Although these cases considered regulations with no explicit retroactivity provisions, the Court regards that as a distinction without a difference. Mr. Thurlow does not articulate a principled reason why the propriety of the *Princess Cruises* analysis should turn on when the Secretary first contends that a revised regulation should apply to all pending claims, or why such analysis would be proper when the contention arises during litigation (as in *Tarver* and *Rodriguez*) but *not* proper when the contention is included in the revision itself.

Mr. Thurlow asserts that, regardless of the Secretary's intent, he cannot apply an *unfavorable* change in law retroactively if the change affects a substantive right. But this reasoning is inconsistent with *Rodriguez* and *Tarver*, where the Federal Circuit found permissible the application of revised § 3.22 to pre-enactment claims based primarily on application of the *Princess Cruises* factors.

The Court finds these cases instructive in considering whether applying the new regulation to Mr. Thurlow's case would have an impermissible retroactive effect. Having determined that the *Princess Cruises* analysis, as amplified by *Rodriguez* and *Tarver*, governs this case, it remains only to apply it.

7

1. **The Secretary's return to his previous interpretation of the regulation does not effect a substantial change in law.**

Initially, the Court must consider the nature and extent of the change in law sought to be applied retroactively. *Princess Cruises*, 397 F.3d at 1364. In *Rodriguez*, the Federal Circuit concluded that the Secretary was merely clarifying its earlier interpretation of a regulation and "thus, the change to the law was not substantial." 511 F.3d at 1154. Similarly, in issuing the new version of § 3.321(b), the Secretary was returning to a position that it held through successive stages of litigation and the change in law was no more substantial than that in *Rodriguez.*

2. **There is no connection between the revised regulation and any past event in this case.**

The second factor is the degree of connection between the operation of the new rule and a relevant past event. *Princess Cruises*, 397 F.3d at 1364. In *Tarver*, the Federal Circuit noted that "[i]n determining whether the statute or regulation at issue has a significant nexus to relevant past events [a court] frequently look[s] to whether the rule affects 'primary conduct,' i.e., the conduct that gave rise to the suit or claim at issue." 557 F.3d at 1375.

In *Rodriguez*, the claimant filed her claim before this Court issued decisions establishing the legal doctrine that favored her claim. 511 F.3d at 1155. The Federal Circuit then found Ms. Rodriguez was unable to point to anything she would have done differently had she been aware of the future regulatory change, and thus she had no reliance interest in the state of the law before the new regulation was promulgated. *Id.* at 1155.

In *Tarver*, the appellant filed her claim after the favorable Court decisions were issued and before the new regulation was promulgated. Nevertheless, the Federal Circuit stated that there was still nothing that Mrs. Tarver or her husband would have done differently in reliance on the Court-announced doctrine, and even assuming there was some reliance interest, it was outweighed by the other *Princess Cruises* factors. *See Tarver*, 557 F.3d at 1376.

In this case, Mr. Thurlow filed the claim on appeal in 2009, well before the Federal Circuit's decision in *Johnson* gave rise to the possibility of an extraschedular rating based on the collective impact of multiple service-connected disabilities. But the grant of service connection for his bilateral hand condition, a principal focus of his argument for an extraschedular rating based on collective impact, occurred 1 month after the issuance of the Federal Circuit issued *Johnson*. As in *Tarver*, however, there is no indication in the record that Mr. Thurlow altered his behavior in reliance on *Johnson*. The claim for the bilateral hand condition has been in appellate status since

2009, and the lumbosacral spine condition has been service connected since the day after his discharge from service.

### 3. Mr. Thurlow had reasonable notice that § 3.321(b) would change and had no reasonable reliance or settled expectations that it would remain unchanged.

Finally, the Court must consider the issues of fair notice, reasonable reliance, and settled expectations. *Princess Cruises*, 397 F.3d at 1364. In both *Rodriguez* and *Tarver*, the Federal Circuit held that, in view of the history of proceedings, the appellants had fair notice of the Secretary's position and could have no settled expectation that the regulatory interpretation set forth in this Court's decisions would not be subject to change. *See Tarver*, 557 F.3d at 1376, *Rodriguez*, 511 F.3d at 1156. Although Mr. Thurlow's claim was pending before § 3.321(b) was revised, the Secretary's interpretation of the prior regulation, disavowing extraschedular consideration based on the collective impact of multiple disabilities, was upheld by a divided Court. *See Johnson v. McDonald*, 26 Vet.App. 237 (2013). Moreover, the Secretary cited administrative materials reflecting his interpretation of § 3.321 and provided an affidavit in *Johnson* stating that he intended to issue a new regulation to solidify his position. *See id.* at 243-44; *id*. at 248 (Moorman, J., concurring). Thus, Mr. Thurlow cannot demonstrate that he had any reasonable expectation that the interpretation set forth in the Federal Circuit's *Johnson* decision would remain unchanged.

The Court concludes that there is no impermissible retroactive effect inherent in the Secretary's intent to have the new regulation apply to claims currently on appeal to this Court. So, Mr. Thurlow's argument based on the collective impact of multiple service-connected disabilities is no longer supported in law. Consequently, any error in the Board's failure to discuss extraschedular rating based on collective impact of multiple service-connected disabilities could not have prejudiced Mr. Thurlow. *See Shinseki v. Sanders,* 556 U.S. 396, 409 (2009).

### B. The Court is unable to conclude that the Board's failure to obtain VA medical records after 2013 did not prejudice Mr. Thurlow.

"The determination of whether a claimant is entitled to an extraschedular rating . . . is a three-step inquiry." *Thun v. Peake*, 22 Vet.App. 111, 116 (2008), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 1366 (Fed. Cir. 2009); *see also Anderson v. Shinseki*, 22 Vet.App. 423, 427 (2009). A claimant must first demonstrate that "the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are

inadequate." *Thun*, 22 Vet.App. at 115. In other words, "[t]he rating schedule must be deemed inadequate before extraschedular consideration is warranted." *Sowers v. McDonald*, 27 Vet.App. 472, 478 (2016). Second, a claimant must establish that the disability exhibits "other related factors," such as marked interference with employment or frequent periods of hospitalization. *Thun*, 22 Vet.App. at 116. "Essentially, the first *Thun* element compares a claimant's symptoms to the rating criteria, while the second addresses the resulting effects of those symptoms." *Yancy v. McDonald*, 27 Vet.App. 484, 494 (2016). Once the first two steps have been satisfied, the third step requires that the adjudicator refer the claim to the Under Secretary for Benefits or the Director of the Compensation Service for a determination of whether an extraschedular rating is warranted. *Thun*, 22 Vet.App. at 116.

Mr. Thurlow argues that because the Board ordered VA to obtain additional treatment records when remanding his claim for entitlement to a TDIU rating, its conclusion as to extraschedular consideration of his shoulder condition was premature.   In the remand portion of its decision, the Board stated that "[t]he record [] suggests that the [v]eteran receives regular VA treatment for his service-connected disabilities, but records since April 2013 have not been associated with the claims folder." R. at 14.

A remand for further development of a veteran's TDIU request does not automatically confer a right to remand of a claim for entitlement to extraschedular disability rating. *Brambley*, 17 Vet.App. at 24. Those matters should be remanded together, however, when the record is "significantly incomplete" to decide the extraschedular question and the development requested by the Board to help it decide whether TDIU is warranted may repair that deficiency. *Id*.; *see also Todd v. McDonald*, 27 Vet.App. 79, 90 (2014). Here, the Court agrees with Mr. Thurlow that it was premature for the Board to decline extraschedular consideration where the record was incomplete with respect to the severity of his left shoulder condition and his employability. *Brambley*, 17 Vet.App. at 24.

To find that this error did not prejudice Mr. Thurlow, the record would have to show that "'the substantially complete application for benefits indicates that there is *no reasonable possibility* that any assistance that VA would provide to the claimant would substantiate the claim.'" *Sullivan v. McDonald*, 815 F.3d 786, 792 (Fed. Cir. 2016) (quoting 38 C.F.R. § 3.159(d) (2015)).  But the Court could not make such a finding in the first instance; the Federal Circuit has stated that "'*[s]uch*

10

*a determination is the quintessential factual determination.*'" *Sullivan*, 815 F.3d at 792-93 (quoting appellant's brief) (emphasis in original).

Mr. Thurlow argues that the missing records might show that his left shoulder disability has symptoms that are more severe than the disability picture contemplated by the rating schedule. The Secretary concedes that the error is prejudicial. This concession is consistent with the principle that without possessing and examining facially relevant records, the Secretary cannot "have any idea as to whether they would, or would not, support [the claimant's] claim." *Moore v. Shinseki*, 555 F.3d 1369, 1375 (Fed. Cir. 2009). The Court therefore will remand the issue of entitlement to referral for extraschedular consideration for a left shoulder disability for reevaluation to include review of post-2013 VA medical records.

Because the claim is being remanded, the Court need not address Mr. Thurlow's additional arguments. "[I]f the proper remedy is a remand, there is no need to analyze and discuss all the other claimed errors that would result in a remedy no broader than a remand." *Mahl v. Principi*, 15 Vet.App. 37, 38 (2001) (per curiam order). But in pursuing his claim on remand, Mr. Thurlow will be free to submit additional argument and evidence as to the remanded matter, and the Board must consider any such evidence or argument submitted. *Kay v. Principi*, 16 Vet.App. 529, 534 (2002).

## IV. CONCLUSION

On consideration of the foregoing, the Court SETS ASIDE that part of the Board's September 22, 2016, decision declining to refer the left shoulder disability for consideration of an extraschedular rating and REMANDS that issue for readjudication in view of post-2013 VA medical records and any private treatment records since 2009.