# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-3386

MARGREIT CASTELLANO, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 28, 2011                                    Decided December 22, 2011)

*Norton Cutler* and *Michael Sink*, of Denver, Colorado, for the appellant.

*Mark D. Vichich*, with whom *Will A. Gunn,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *David L. Quinn*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before KASOLD, *Chief Judge*, and DAVIS and SCHOELEN, *Judges.*

KASOLD, *Chief Judge*, filed the opinion of the Court.  SCHOELEN, *Judge*, filed a concurring opinion.

KASOLD, *Chief Judge*: Margreit Castellano, surviving spouse of veteran Frederick C. Castellano, appeals through counsel that part of a July 7, 2009, decision of the Board of Veterans' Appeals (Board) that denied entitlement to (1) service connection for bipolar disorder, (2) service connection for Alzheimer's disease, (3) special monthly compensation (SMC) pursuant to 38 U.S.C. § 1114(s), and (4) a total disability rating based on individual unemployability (TDIU).  Mrs. Castellano contends that the Board erred (1) in finding that a June 26, 2000, VA medical report and private nursing home records were not to be considered evidence in Mr. Castellano's claims file at the date of his death, (2) by not considering her arguments on remand, as evidenced by the Board's reissuing, in large part, the same statement of reasons or bases issued in a previous Board decision that had been remanded by the Court, and (3) in denying her claims.  The Secretary disputes these arguments.

For the reasons stated herein, we hold that (1) at the time Mrs. Castellano filed her claim, the Secretary authorized, inter alia, "[r]eports of hospitalization, treatment or examinations authorized by VA" to be deemed included in the file at the date of the veteran's death "even if such reports are not reduced to writing or are not physically placed in file until after death," VA ADJUDICATION PROCEDURES MANUAL M21-1 (M21-1), pt. VI, para. 5.06(c) (May 8, 2000), (2) this deemed inclusion was a substantive right that could not be eliminated except in accordance with law, (3) this substantive right was not eliminated properly until after Mrs. Castellano filed her claim and that change did not operate retroactively, and (4) Mrs. Castellano was entitled to the benefit of this right. We also hold, inter alia, that – although the Board is not per se prohibited from relying on many of the same reasons or bases supporting a previous Board decision that addressed the same matters but had been remanded for further adjudication – a Board decision on appeal nevertheless must stand on its own statement of reasons or bases (whether reiterating what had been stated in a previous Board decision or not) and otherwise adequately address the issues raised below. Given these holdings and based on the record on appeal and applicable law, that part of the Board decision on appeal will be set aside and the matters remanded for further adjudication consistent with this decision.

## I. FACTS

Mr. Castellano served on active duty from April 1943 to October 1944. In October 1944, he was granted service connection for his mental condition, labeled at that time as "psychoneurosis." Record (R.) at 4196. Over time, Mr. Castellano's condition was labeled variously, including "personality disorder," "post-traumatic stress disorder" (PTSD), "mixed depression and anxiety with psychotic symptoms," "bipolar disorder," and "anxiety reaction." In the 1990s, Mr. Castellano also was diagnosed with Alzheimer's disease (also referred to in the record as "dementia"[1]). On May 18, 2000, Mr. Castellano died. At the time of his death, he had pending adjudication an increased-rating claim for anxiety reaction (the regional office's (RO's)

---

[1] "Alzheimer disease (dementia)" is defined as "a general loss of cognitive abilities, including impairment of memory, as well as . . . disturbed planning, organizing, and abstract thinking abilities." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 57, 492 (31st ed. 2007).

label for the psychoneurosis condition) and a claim for disability compensation for Alzheimer's disease, SMC, TDIU, and a psychiatric disorder other than anxiety reaction.

Mrs. Castellano filed an accrued benefits claim on June 29, 2000. Her claim was denied in a September 2005 Board decision, but Mrs. Castellano appealed. Pursuant to a joint motion for remand (JMR), her claim was remanded for further adjudication of all matters except entitlement to accrued benefits for her husband's claim for increased benefits for service-connected anxiety reaction, which Mrs. Castellano explicitly abandoned. Her claim was denied again in a December 2007 Board decision, but subsequently remanded by the Court pursuant to another JMR. The 2009 Board decision here on appeal, inter alia, (1) found that a June 26, 2000, VA medical report of treatment or examination was prepared after Mr. Castellano's death and therefore could not be deemed in his file at the date of his death, (2) noted that private nursing home records also could not be considered in his file at the date of his death, and (3) maintained its denial of benefits for bipolar disorder, Alzheimer's disease, SMC and TDIU, reiterating many of the same reasons or bases supporting the December 2007 Board decision that had been remanded for further adjudication. This appeal followed.

## II. PARTIES' ARGUMENTS

On appeal, Mrs. Castellano argues that the June 26, 2000, VA medical opinion and private nursing home records should have been deemed by the Board to be in Mr. Castellano's claims file at the date of his death, pursuant to provisions in the 1992 M21-1 that she asserts were declared substantive law by *Hayes v. Brown*, 4 Vet.App. 353, 360 (1993). She also argues that the 2009 Board decision on appeal (1) failed to address her arguments on remand and reprinted its statement of reasons or bases from a previous decision, therefore violating its *Stegall* duty to readjudicate the matters remanded, *see Stegall v. West*, 11 Vet.App. 268, 271 (1998), (2) erred in not applying the benefit of the doubt and finding Mr. Castellano's Alzheimer's disease not aggravated by his service-connected anxiety disorder, (3) erred in not applying the benefit of the doubt and finding that Mr. Castellano had no bipolar disorder, and (4) erred in denying SMC and TDIU, which are inextricably intertwined with the other matters.

The Secretary contends that the M21-1 provisions relied on by Mrs. Castellano were revised on May 8, 2000, prior to her claim, and that she therefore was not entitled to the

3

application of the prior version. Moreover, he argues that the Board plausibly determined that the June 26, 2000, VA medical opinion was prepared after Mr. Castellano's death, and therefore was not constructively in the file at the date of his death. As to Mrs. Castellano's other issues, the Secretary argues that (1) Mrs. Castellano has failed to demonstrate the relevancy of the private nursing home records, (2) the Board substantially complied with its remand duties under *Stegall*, and (3) the Board plausibly rendered findings on Alzheimer's disease, bipolar disorder, SMC, and TDIU.

## III. DISCUSSION

### A. Evidence in the File at Date of Death

As discussed below, we agree with Mrs. Castellano that (1) at the time of her claim, the Secretary authorized certain documents to be deemed in the file at the date of the veteran's death, and (2) she is entitled to the benefit of that authorization.

### 1. APA and the M21-1 Generally

The Administrative Procedure Act (APA) mandates that Federal agencies publish their substantive rules, and amendments thereof, in the Federal Register, to provide notice to affected citizens and the opportunity to comment. *See* 5 U.S.C. §§ 552, 553; *Morton v. Ruiz*, 415 U.S. 199, 232 (1974) (APA provides that "administrative policies affecting individual rights and obligations be promulgated pursuant to certain stated procedures so as to avoid the inherently arbitrary nature of unpublished ad hoc determinations"). Although it was VA policy to comply voluntarily with the APA since 1972, VA was not otherwise required by law to comply with the APA until the Veterans' Judicial Review Act (VJRA) became effective in September 1, 1989. *Compare* Administrative Procedure Act, Pub. L. No. 89-554 (1966) (excluding matters relating to "benefits" from the APA), *with* Veterans' Judicial Review Act, Pub. L. No. 100-687 (1988) (subjecting VA to the APA); *see also* 38 C.F.R. § 1.12 (1972) ("It is the policy of the Department of Veterans Affairs to afford the public general notice, published in the *Federal Register*, of proposed regulatory development, and an opportunity to participate in the regulatory development in accordance with the provisions of the Administrative Procedure Act (APA). All written comments received will be available for public inspection.")). Thus, until passage of the VJRA, VA rules and regulations lived in "splendid isolation," generally unconstrained by

4

judicial review. *Brown v. Gardner*, 513 U.S. 115, 122 (1994); *see* Pub. L. 100-687 (permitting judicial review by this Court and the U.S. Court of Appeals for the Federal Circuit (Federal Circuit)).

Given this unique history, it is not a surprise that substantive rules promulgated before the APA might be contained in the M21-1 or a directive, letter, or other document. *See Buzinski v. Brown*, 6 Vet.App. 360, 369 (1994) (noting that *Rank v. Nimmo*, 677 F.2d 692, 698 (9th Cir. 1982), held that "VA handbooks, circulars, and manuals" may have the "force and effect of law" if they prescribe substantive rules); *Fugere v. Derwinski*, 1 Vet.App. 103, 107 (1990) (the placement of a rule "in a procedural manual cannot disguise its true nature as a substantive rule"), *aff'd,* 972 F.2d 331 (Fed. Cir. 1992).

Moreover, substantive rules promulgated prior to the statutory requirement that VA comply with the APA remain binding on the Secretary until they properly are revoked or amended. *See Fugere*, 1 Vet.App. at 110 (noting that a substantive rule may not be rescinded until the Secretary has "'published notice of his intention to rescind it, invited comment, put that comment . . . on the public record, and published a reasoned and reviewable explanation of his decision to rescind [it].'" (quoting *Nat'l Wildlife Fed'n v. Watt*, 571 F. Supp. 1145, 1156 (D.D.C. 1983))). This is consistent with procedural regularity and basic fair play required in adjudicating veterans' claims. *See Thurber v. Brown*, 5 Vet.App. 119, 123 (1993) (holding that veterans in particular are entitled to "procedural regularity and basic fair play" in the adjudication of their claims); *Fugere*, 1 Vet.App. at 108 ("'Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.'" (quoting *Morton*, 415 U.S. at 235)).[2]

---

[2]  We also have held that substantive procedural provisions favorable to a veteran and contained outside the Code of Federal Regulations are binding on the Secretary even if promulgated after VA was required by law to comply with the APA. *See McCormick v. Gober*, 14 Vet.App. 39, 49 (2000) (requiring the Secretary to request copies of SMRs and VA medical records pursuant to the substantive "VBA Letter Immediate Development provisions" from 1999); *Patton v. West*, 12 Vet.App. 272, 282 (1999) (stating that the Board "cannot ignore provisions of the Manual M21-1 . . . that are favorable to a veteran" and applying an altered substantive manual provision from 1997). These holdings similarly stem from the fair process notion that the Secretary must adhere to his own policies when adjudicating veterans' claims. *See Morton*, 415 U.S. at 235 ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required."); *Thurber*, *supra*; *but see Guerra v. Shinseki*, 642 F.3d 1046, 1050-51 (Fed. Cir. 2011) (acknowledging Secretary's position that the M21-1 is primarily "'an internal manual used to convey guidance to VA adjudicators [and] not intended to establish substantive rules beyond those contained in statutes and regulations.'" (quoting 72 Fed. Reg. 66,218 (Nov. 27, 2007)); *Haas v. Peake*, 525 F.3d 1168, 1197 (Fed. Cir. 2008) (same); *Fournier v. Shinseki*, 23 Vet.App. 480, 487-88 (2010) (same).

Of course, it is now clear that a properly promulgated regulation trumps an M21-1 provision or other VA directive that plainly is erroneous or inconsistent with regulation. *Compare Smith v. Shinseki*, 647 F.3d 1380, 1385 (Fed. Cir. 2011) ("VA interpretations of its own regulations in its Adjudication Procedures Manual [M21-1] are 'controlling' as long as they are not 'plainly erroneous or inconsistent with the regulation.'" (citing *Thun v. Shinseki*, 572 F.3d 1366, 1369 (Fed. Cir. 2009) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)))), *Haas*, 525 F.3d at 1197 (holding that an M21-1 inconsistent with regulation confers no rights on claimant), *and Fournier*, 23 Vet.App. at 487-88 (discussing *Haas*), *with Cohen v. Brown*, 10 Vet.App. 128, 139 (1997) ("Where the Manual M21-1 and the regulation overlap, the Manual M21-1 is irrelevant . . . . except where the Manual M21-1 is more favorable to the claimant.").

### 2. Applicable Substantive Law

#### a. VA-Authorized Reports of Treatment

At the time Mrs. Castellano filed her claim for accrued benefits on June 29, 2000, the law generally restricted the evidence that could be considered when adjudicating an accrued benefits claim to that which was "in the [veteran's] file at date of death." 38 U.S.C. § 5121. Exercising his authority to promulgate rules appropriate to carrying out the law, however, the Secretary authorized "[r]eports of hospitalization, treatment or examinations authorized by VA" [hereinafter "VA-authorized reports of treatment"] to be deemed in the file at date of death "even if such reports are not reduced to writing or are not physically placed in file until after death."[3] M21-1, pt. VI, para. 5.25(a) (Sept. 21, 1992). This authorization dates back to at least 1985, before mandatory compliance with the APA. *See* M21-1, para. 56.24 (Sept. 5, 1985) ("Evidence 'in file' will be interpreted to include the following even if such reports are not reduced to writing or are not physically placed in file until after death: . . . Reports of hospitalization, treatment or examinations authorized by the VA.").

In *Hayes*, this Court (1) recognized some confusion with the full scope of section 5121 as it related to evidence in the file at date of death, and (2) noted that "the Secretary has wide latitude in establishing departmental policy as to what post-date-of-death evidence may be

---

[3] This provision also authorized service department records, reports of VA hospitalization, reports of treatment or examinations in VA medical centers including those in outpatient treatment folders, and reports of autopsy made by VA on the date of death to be deemed included in the file at date of death. M21-1, pt. VI, para. 5.25(a) (Sept. 21, 1992).

considered." 4 Vet.App. at 360; *see also Hyatt v. Shinseki*, 566 F.3d 1364, 1370 (Fed. Cir. 2009) (noting that the decision in *Hayes*, *supra*, rested on a "perceived conflict between subsections (a) and (c) of § 5121," but that the perceived conflict was resolved with an amended regulation promulgated in November 2002). The Court also discussed regulatory § 3.1000(d)(4) and noted that this section applied "only to evidence in the file at date of death and the death certificate and, does not, by its terms, contemplate the submission of any other post-death evidence." 4 Vet.App. at 358-59. The Court concluded that, "[t]o the extent that the[] Manual provisions affect what post-date-of-death evidence may be considered, they have the force of law as they affect a substantive right." 4 Vet.App. at 360 (quoting *Fugere*, 1 Vet.App. at 107) (internal quotation marks omitted). The Court also noted that the Secretary might consider clarifying his policy with regard to what evidence submitted after death could be considered when adjudicating an accrued benefits claim.

Although the M21-1 was changed on May 8, 2000 (prior to the date Mrs. Castellano filed her claim), the changes made with regard to VA-authorized reports of treatment being deemed included in the file at date of death were cosmetic, such that notice and comment were not required. *See Fugere*, 1 Vet.App. at 110.[4] As illustrated below, this language was moved to paragraph 5.06(c), with only a redundant phrase being removed. Specifically, the phrase "reports of treatment or examinations in VA medical centers including those in outpatient treatment folders," was removed; it was redundant with the language authorizing VA reports of treatment or examination to be deemed included in the file at the date of death. *Compare* M21-1, pt. VI, para. 5.25(a) (Sept. 21, 1992) (emphasis added), to wit:

> a. Evidence in File at Date of Death. Evidence 'in file' includes the following, even if such reports are not reduced to writing or are not physically placed in file until after death: (1) Service department records; (2) Reports of VA hospitalization; *(3) Reports of treatment or examinations in VA medical center including those in outpatient treatment folders*; (4) Reports of hospitalization, treatment, or examinations authorized by VA[;] and (5) Reports of autopsy made by VA on the date of death,

---

[4] The Secretary ultimately promulgated a regulation that limited the evidence that could be included in the file at date of death to documents already in VA's possession, but he did not do this until November 27, 2002, well after Mrs. Castellano submitted her claim. *See* Evidence for Accrued Benefits, 67 Fed. Reg. 65,707 (Oct. 28, 2002); *see also* section III.A.3, *infra*.

*with* M21-1, pt. VI, para. 5.06(c) (May 8, 2000), to wit:

> c. Evidence in File at Date of Death. . . . Evidence 'in file' includes the following, even if such reports are not reduced to writing or are not physically placed in file until after death: (1) Service department records; (2) Reports of VA hospitalization; (3) Reports of hospitalization, treatment, or examinations authorized by VA; and (4) Reports of autopsy made by VA on the date of death.

Accordingly, at the time Mrs. Castellano filed her claim, (1) the Secretary deemed VA-authorized reports of treatment to be included in Mr. Castellano's claims file at the date of his death, (2) this deemed inclusion was a substantive rule promulgated prior to the APA and pursuant to the Secretary's statutory authority to promulgate rules, and (3) Mrs. Castellano was entitled to the benefit of this substantive rule.

### b. Evidence Identifying, Verifying, or Corroborating the Death Certificate [5]

In contrast to the May 2000 cosmetic changes made to paragraph 5.25(a) of the 1992 M21-1, paragraph 5.25(b) of the 1992 M21-1 underwent substantive change. Specifically, paragraph 5.25(b) was altered by narrowing the type of evidence accepted from that which corroborated *any evidence in the file* to that which corroborated the *death certificate. Compare* M21-1, pt. VI, para. 5.25(b) (Sept. 21, 1992) (emphasis added), to wit:

> b. Evidence Essentially Complete. The provisions of 38 CFR 3.1000(d)(4) . . . provide for the acceptance of evidence after death for verifying or corroborating evidence *'in file' at death*,

*with* M21-1, pt. VI, para. 5.06(d) (May 8, 2000) (emphasis added), to wit:

> c. Evidence Essentially Complete. The provisions of 38 CFR 3.1000(d)(4) . . . provide[s] for acceptance of evidence (including uncertified statements) when considered in connection with the identifying, verifying, or corroborative effect *of the death certificate.*

---

[5] Although our concurring colleague questions the propriety and necessity of our addressing paragraph 5.25(b) of the 1992 M21-1 and its successor paragraph 5.06(d) of the 2000 M21-1 in this case, we note that Mrs. Castellano raised the applicability of these provisions by arguing that the postdeath evidence she submitted should be considered under paragraph 5.25(b) of the 1992 M21-1. *See* Appellant's Brief at 11-12 (noting that the doctor's report serves to "corroborate and verify information in [Mr. Castellano's] file at the date of his death," citing *Hayes*'s discussion of paragraph 5.25(b), and arguing that the nursing home records should also be considered part of the file). Moreover, this discussion illuminates the correct substantive law to be applied in further proceedings, given that, as we note *infra* at section III.A.3.b, Mrs. Castellano may present on remand evidence and argument in support of her position that the nursing home records should be considered in her claim pursuant to paragraph 5.06(d).

Although this was a substantive change, we note that – in contrast to paragraph 5.25(a), which makes no reference to a regulation or otherwise purports to be interpreting a regulation, *see* 67 Fed. Reg. 9,638 (Mar. 4, 2002) (proposed rule to amend § 3.1000(d)(4)) (noting that regulations prior "do not define the term 'evidence in the file'") – paragraph 5.25(b) explicitly purported to be implementing regulatory § 3.1000(d)(4), as did its successor provision of the M21-1, paragraph 5.06(d). Significantly, on its face, paragraph 5.25(b) plainly was inconsistent with § 3.1000(d)(4), which provided only for the acceptance of evidence for "identifying, verifying, or corroborative effect of the *death certificate*" (emphasis added), since at least 1972. Thus, the changes made in 2000 actually brought the language of paragraph 5.25(b) into conformance with regulatory § 3.1000(d)(4), the regulation that it explicitly purported to be implementing.

Also of significance, the Court in *Hayes* never explicitly found the provisions of paragraph 5.25(b) to be substantive; rather, as noted above, the Court generally held that "[t]o the extent that these Manual provisions affect what post-date-of-death evidence may be considered, they have the force of law as they affect a substantive right." 4 Vet.App. at 360 (quoting *Fugere*, 1 Vet.App. at 107) (internal quotation marks omitted). Although the Court noted that paragraph 5.25(b) cited regulatory § 3.1000(d)(4), it never addressed whether paragraph 5.25(b) of the M21-1 could stand in direct contravention of the very regulation on which it purportedly rested.

Moreover, to the extent there may have been any understanding at the time *Hayes* issued that the M21-1 could trump a regulation that it purports to explain, it has been clarified that a properly promulgated regulation trumps an M21-1 provision or other VA directive that plainly is erroneous or inconsistent with regulation. *See Smith, Haas*, and *Fournier*, all *supra*.[6] As such,

---

[6] Our concurring colleague takes issue with our interpretation of *Smith*, *Haas*, and *Fournier*. However, *Smith* states clearly that "VA interpretations of its own regulations in its Adjudication Procedures Manual [M21-1] are 'controlling' as long as they are not 'plainly erroneous or inconsistent with the regulation,'" 647 F.3d at 1385, and paragraph 5.25(b) clearly is an interpretation of regulation that plainly is inconsistent with that regulation. Similarly, in *Haas*, the Federal Circuit held that an M21-1 provision inconsistent with a regulation did "not confer any rights" on Mr. Haas because the Secretary's regulation was clear. 525 F.3d at at 1197; *see also Fournier*, 23 Vet.App. at 487 ("[*Haas*] indicated that when the Agency's interpretation of a statute is clear from existing regulations, any discrepancy between M21-1 and the regulations 'does not confer any rights' on a claimant."). Here, § 3.1000(d)(4) clearly provided for accepting evidence for the "corroborative effect of the death certificate," and paragraph 5.25(b) plainly was inconsistent with that language. Moreover, although our concurring colleague attempts to distinguish *Haas* by noting that the change in regulation in *Haas postdated* the M21-1 provision, *Haas* emphasized the regulation's clarity, not the regulation's date, as the key component in finding the M21-1 provision not binding. *See* 525 F.3d at 1197.

we conclude that Mrs. Castellano cannot rely on paragraph 5.25(b) of the 1992 M21-1 because it (1) plainly was inconsistent with the regulation that it purported to explain and (2) it was modified to comport with the regulation at the time she filed her claim. Therefore, paragraph 5.06(d) of the May 8, 2000, M21-1, not paragraph 5.25(b) of the 1992 M21-1, applies to Mrs. Castellano's claim.

### 3. The Board's Application of the Substantive Law

#### a. June 2000 VA Medical Report

In the decision on appeal, the Board found that the June 2000 VA medical report was not requested until after Mr. Castellano's death, was not prepared until after Mr. Castellano's death, and therefore could not be considered in the adjudication of Mrs. Castellano's accrued benefits claim. In its discussion, the Board referenced both paragraph 5.06(c) of the May 8, 2000, M21-1, as well as the current version of 38 C.F.R. § 3.1000(d)(4) (2011), which was not in effect at the time Mrs. Castellano filed her claim.

#### (1) Application of Paragraph 5.06(c) of the May 8, 2000, M21-1

In its application of paragraph 5.06(c), the Board clearly erred in finding that the June 2000 VA medical report did not constitute a VA-authorized report of treatment deemed included in the file at the date of death. *See Butts v. Brown*, 5 Vet.App. 532, 534 (1993) (en banc) (Court reviews findings of fact under the "clearly erroneous" standard); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) ("'A finding is "clearly erroneous" when . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))). There is no dispute on appeal that this report was authorized by VA; indeed, this was conceded at oral argument. It also is undisputed that the report reflects the VA doctor's treatment and examination assessment of the disabilities from which Mr. Castellano suffered before he died, and provides an opinion of the etiology of his disabilities, such that it constitutes a report of treatment.

Although the Board found that the report was both requested and prepared after death, nothing in paragraph 5.06(c) (or its predecessor, paragraph 5.25(b) of the 1992 M21-1) supports a conclusion that such factors are a basis for excluding the report from being deemed in the file at date of death. At the time of Mrs. Castellano's claim, paragraph 5.06(c)'s sole requirements for the document to be deemed included in the file at date of death were that the document was

(1) a report of treatment, (2) authorized by the VA, and (3) reduced to writing. The provision did not mandate that the report be requested or prepared before death.

Moreover, although the Secretary argues that a doctor's unrecorded thoughts on the date of a veteran's death cannot constitute a report in the file at date of death, the Secretary's argument is a red herring. The substantive law at the time Mrs. Castellano filed her claim did not address a doctor's unrecorded thoughts and the state of a potential report at the time of death. Rather, the substantive law permitted a VA-authorized report of treatment – no matter what form it took at the moment of the veteran's death – to be deemed included in the file once reduced to writing after death.[7] This is the case here with the June 2000 report of treatment, which, although not recorded until after the death of Mr. Castellano, was authorized by the Secretary to be written, and therefore authorized by the Secretary to be deemed in the file at the date of Mr. Castellano's death.

*(2) Application of § 3.1000(d)(4) (2011)*

In rendering its decision, the Board also applied § 3.1000(d)(4) (2011).[8] This application was in error, however, because the regulation was not intended to be retroactive and its retroactive application has an impermissible retroactive effect. *See* 38 U.S.C. § 7261(a)(3) (Court shall hold unlawful conclusions of Board "not in accordance with law"). The current version of § 3.1000(d)(4) was promulgated on November 27, 2002 – more than two years after Mrs. Castellano filed her claim – and limits evidence in the file at date of death to that which was in VA's possession, to wit:

---

[7] Our concurring colleague argues that this "holding appears to permit a VA report of treatment, that is requested and written many years after a veteran's death, to be deemed evidence in the file at the date of death." *Post* at 25. Our holding, however, simply restates what the Secretary authorized in paragraph 5.25(a) of the 1992 M21-1 (and its cosmetically changed version, paragraph 5.06(c) of the 2000 M21-1), to wit: if he authorizes VA to prepare a post-date-of-death medical report, it will be deemed in the file at the date of death. We further note that as of November 27, 2002, the Secretary promulgated a regulation limiting the evidence deemed in the file at the date of death to that "in VA's possession on or before the date of the beneficiary's death" (38 C.F.R. s 3.1000(d)(4) (2002); *see* 67 Fed. Reg. 65,707 (Oct. 28, 2002)), such that VA reports requested or written after death are no longer deemed part of the file on the date of death for accrued benefits claims.

[8] Although our concurring colleague states that our analysis of the retroactive application of § 3.1000(d)(4) (2011) is unnecessary because "the Secretary has not maintained that the regulation applies retroactively," *Post* at 28, we note that he also has not maintained that it is not retroactive. Further, our review is of Board decisions, and the Board applied the regulation retroactively and considered it as a basis for not deeming the submitted evidence in the file at date of death (*see* R. at 11 (concluding that the "psychiatrist's report was not 'in VA's possession on or before the date of the beneficiary's death'" (quoting § 3.1000(d)(4) (2011))). *See* 38 U.S.C. § 7252; *see also* 38 U.S.C. § 7261(a)(3) (Court shall hold unlawful conclusions of Board "not in accordance with law").

11

> Evidence in the file at date of death means evidence in VA's possession on or before the date of the beneficiary's death, even if such evidence was not physically located in the VA claims folder on or before the date of death.

Although there is no dispute that this regulation applies to all claims filed after November 27, 2002, *see Hyatt, supra*, applying the amended version of a regulation to an already pending claim is not "favored in the law" unless the Secretary expressly intends it to govern pending or prior claims, *Rodriguez v. Peake*, 511 F.3d 1147, 1152 (Fed. Cir. 2008) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 246 (1994)); *see Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1362 (Fed. Cir. 2005) ("'[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.'" (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988))); *Ervin v. Shinseki*, 24 Vet.App. 318, 323 (2011) (applying amended regulation to pending claim when Secretary's express intent was clear).

With regard to any intention by the Secretary to apply this amendment retroactively to claims pending at the time the regulation was promulgated, none is evident in the promulgating documents or elsewhere, *see* 67 Fed. Reg. 9,638 (Mar. 4, 2002) (proposed rule to amend § 3.1000(d)(4) and remove provisions of VA Manual M21-1 inconsistent with amended § 3.1000(d)(4)); Evidence for Accrued Benefits, 67 Fed. Reg. 65,707 (Oct. 28, 2002) (final rule amending 38 C.F.R. § 3.1000(d)(4) and noting no comments submitted during notice-and-comment period), and the Secretary makes no such argument on appeal.

To determine whether a regulation has an impermissible retroactive effect, we look to (1) the nature and extent of the change of the law, (2) the degree of connection between the operation of the new rule and a relevant past event, and (3) familiar considerations of fair notice, reasonable reliance, and settled expectations. *Rodriguez*, 511 F.3d at 1153 (citing *Princess Cruises*, 397 F.3d at 1362-63). Moreover, in the context of veterans claims and benefits, our analysis is guided by the dictates of fair process. *See Thurber*, 5 Vet.App. at 123.

Evaluating the *Princess Cruises* factors, we conclude that applying amended regulatory § 3.1000(d)(4) in this instance has an impermissible retroactive effect. First, the extent of the change in the law is significant. As discussed above, previous to November 27, 2002, the substantive law regarding evidence in the file at date of death permitted VA-authorized reports

12

of treatment *reduced to writing after death* nevertheless to be deemed included in the file at date of death. This entitlement was eliminated by the 2002 amendment to § 3.1000(d)(4) (2002), limiting the evidence deemed included in the file at date of death to that which was *in VA's possession at date of death*. Apparent on its face, and as recognized by the Secretary when promulgating the regulation in 2002, the amendment effected a change in a longstanding policy, rather than explain or clarify an already existing policy. *See* 67 Fed. Reg. 65,707 (indicating that amended § 3.1000(d)(4) is a divergence from previous VA policy toward evidence in the file at date of death). This amendment was more than a clarification; it was a substantive and significant change that limited evidence that previously could have been considered when adjudicating an accrued benefits claim. *Compare Princess Cruises*, 397 F.3d at 1365 (finding that a "strong and unprecedented" evidentiary presumption previously not found in statute or regulation constitutes a significant change in law), *with Rodriguez*, 511 F.3d at 1154 (noting that clarification of an already existing policy does not constitute substantial change in the law).

Second, the amended regulation is connected to a relevant past event. In addressing this element in *Princess Cruises*, the Federal Circuit noted that a recent U.S. Customs and Border Protection ruling created an evidentiary presumption that could only be overcome by data that had not been – and could no longer be – collected by the cruise line; thus, the presumption could not be overcome in that instance and was connected to a relevant past event. 397 F.3d at 1360-66. Here, Mrs. Castellano filed her claim and obtained the VA-authorized report when VA reports of treatment recorded after death still could be deemed in the file at date of death – prior to the regulation change in 2002. Similar to the situation in *Princess Cruises*, in Mrs. Castellano's case, an amended regulation created an evidentiary rule that cannot be overcome, because Mrs. Castellano cannot return to the time before her husband's death and submit the report to the Secretary, as the amended regulation now requires. In other words, had she known about a future rule change that would be applied retroactively to exclude evidence obtained after her husband's death, she and her husband could have acted differently by obtaining the report before her husband's death. *See Tarver v. Shinseki*, 557 F.3d 1371, 1375 (Fed. Cir. 2009) (addressing whether claimant would have acted differently had she known about the rule change).

13

Moreover, the change in law particularly is relevant to a past event – the collection of evidence before Mr. Castellano's death (or lack thereof) – because the Secretary (who amended the regulation) bears partial responsibility in collecting relevant evidence pursuant to the duty to assist. Indeed, it would exceed the bounds of fairness due a veteran to permit the Board's retroactive enforcement of an evidentiary standard that excludes certain evidence from consideration when the Secretary did not declare the regulation change to be retroactive when it was promulgated, and the Secretary otherwise did not timely collect the evidence necessary to surmount the retroactive evidentiary standard. Ultimately, because the evidence can no longer be collected in a way that would surmount the retroactive evidentiary standard, that collection opportunity is a relevant past event connected to the amended regulation. *See id.* (taking into account "equitable considerations such as the posture of the case and the extent to which the parties have relied to their prejudice on the superseded rule" in evaluating whether there is a connection to a relevant past event).

We further note the stark difference between the facts in this case and the facts in *Rodriguez*, 511 F.3d at 1156, that led the Federal Circuit in that case to permit retroactive application of a change in regulation. In *Rodriguez*, when considering whether the change in regulation was connected to a relevant past event, the Federal Circuit explicitly noted that Mrs. Rodriguez had filed her claim *prior* to the caselaw that interpreted a statute in a manner favorable to Mrs. Rodriguez, such that Mrs. Rodriguez had not relied on the favorable interpretation when she filed her claim. *Id.* at 1155 ("Rodriguez did not rely to her detriment on the prior state of the law."). In that circumstance, the change in regulation reversing the effect of that caselaw was not related to a past event. *Id.* Here, as noted, Mrs. Castellano filed her claim and obtained the report when *she was entitled by substantive law* to have VA-authorized reports deemed included in the file at date of death. It is only the possible retroactive effect of later change in regulation that might preclude consideration of this report in adjudicating Mrs. Castellano's claim.

Third, considering fair notice, reasonable reliance, and settled expectations, the Secretary posited one policy toward evidence in the file at the date of death from at least 1985 to 2002, and this Court found it to be substantive law. *See Tarver*, 557 F.3d at 1376 (examining Secretary's historic practice in evaluating settled expectations). Mrs. Castellano reasonably relied on that

14

law in gathering evidence for her claim and, after the Secretary first provided notice of a significantly different law on March 4, 2002, *see* 67 Fed. Reg. 9638, well after Mrs. Castellano filed her claim, there was nothing further she could do to have her evidence admitted. *See Princess Cruises*, 397 F.3d at 1366 ("[T]he imposition of an evidentiary [rule] that cannot possibly be met strongly implicates fairness considerations."). The Secretary's consistent past practice is unlike the situation in *Rodriguez*, 511 F.3d at 1156, where a claimant could not have settled expectations of a law because it had undergone "multiple changes." 511 F.3d at 1156.

Accordingly, to the extent the Board rejected consideration of the June 2000 VA medical report based on the application of amended § 3.1000(d)(4), such application had an impermissibly retroactive effect. Overall, remand is warranted for the Board to consider this report in the adjudication of Mrs. Castellano's claim for accrued benefits. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate"); *Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991) (Court is not to conduct de novo factfinding but rather to remand the matter for the Board to find facts in the first instance).

### b. Private Nursing Home Records

The Board found that the private nursing home records postdated the period of care authorized by VA, and Mrs. Castellano does not demonstrate – nor does the record of proceedings reflect – clear error in that finding. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (appellant has burden of demonstrating error); *Butts* and *Gilbert*, both *supra*. Accordingly, these records postdating VA-authorized care could not be deemed in the file at date of death under paragraph 5.06(c) of the May 8, 2000, M21-1.

As to whether the records might be admissible under paragraph 5.06(d) of the May 8, 2000, M21-1 because they identify, verify, or corroborate the death certificate, the Secretary generally notes that Mrs. Castellano fails to establish the relevance of these records to her claim. However, the Board failed to address whether these records could be considered under subsection (d) and, in light of the need to remand for consideration of the June 2000 VA medical report and pursuant to the general rule that a claimant may submit new argument and evidence on remand, Mrs. Castellano will have an opportunity on remand to establish the relevancy of

these private records. If so presented, the Board must discuss the issue. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (on remand, Board must consider any additional evidence and argument that the claimant presents in support of the matters remanded).

## B. *Stegall* and Substantial Compliance on Remand

Mrs. Castellano also contends that the July 2009 Board violated its *Stegall* duty to readjudicate her claim when it last was remanded by the Court pursuant to a JMR. *See Stegall*, 11 Vet.App. at 271 ("[A] remand by this Court to the Board confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders."). More specifically, she argues that the reasons or bases in the July 2009 Board decision improperly replicated the reasons or bases of the December 2007 Board decision, which was vacated *entirely* by the December 2008 Court order pursuant to JMR.

As we consistently have stated, the Board's duty upon remand is to consider any additional evidence and argument that the claimant presents on remand. *Kay*, *supra*. This duty applies to all matters remanded, regardless of whether they were the explicit bases for the remand. Moreover, the Board's duty on remand is not tied to whether the Board decision on appeal was set aside or vacated by the Court. *See Leopoldo v. Brown*, 4 Vet.App. 216, 219 (1993) (remanding without vacating or setting aside Board decision, and noting that "appellant is free . . . to offer additional evidence" on remand); *Ohland v. Derwinski*, 1 Vet.App. 147, 150 (1991) (remanding without vacating or setting aside the Board decision); *Sammarco v. Derwinski*, 1 Vet.App. 111, 114 (1991) (same).

Although it is best practice for the Board explicitly to note and specifically respond to each additional argument raised on remand, the Board sufficiently meets its duty under *Kay* when it adequately addresses the issues raised. *See D'Aries v. Peake*, 22 Vet.App. 97, 105 (2008) (substantial compliance, not strict compliance, is required under *Stegall*); *Dyment v. West*, 13 Vet.App. 141, 146-47 (1999) (finding substantial compliance with remand order where, although examiner failed to presume exposure to asbestos, he "ultimately ma[d]e a determination as to whether asbestos contributed to [the claimant's] disability"); *see also* 38 U.S.C. § 7104(d)(1) (Board must adequately address "all material *issues* of fact and law presented on the record" (emphasis added)). *Compare* BLACK'S LAW DICTIONARY 907 (9th ed. 2009) [hereinafter BLACK'S] (defining "issue" as a "question of law or fact" or both), *with* BLACK'S at

121 (defining "argument" as a "statement that attempts to persuade"). Further, if a claimant presents no new arguments on a remanded matter or merely recycles old arguments, there is no requirement that the Board employ different words to restate its decision. Rather, if the Board reconsiders the evidence and decides to reinstate its previous determination on a matter, it may replicate the language it employed previously.

Here, as Mrs. Castellano notes, the July 2009 Board newly addressed the issue of the June 26, 2000, VA doctor's letter and whether it could be deemed in the file at date of death pursuant to § 3.1000(d)(4) (2011), but the July 2009 Board decision on appeal otherwise largely replicated the reasons or bases in the December 2007 Board decision. Mrs. Castellano also correctly notes that she submitted additional written argument on the matters remanded that was not specifically addressed by the July 2009 Board in its statement. Although the Board did not specifically address much of the written argument she submitted, the written argument is contained in the record and the Board is presumed to have considered it. *See Newhouse v. Nicholson*, 497 F.3d 1298, 1302 (Fed. Cir. 2007) (absent specific evidence indicating otherwise, there is a presumption that the Board considers all evidence of record). Moreover, although the July 2009 Board largely recycled the statement of the 2007 Board, the statement nevertheless addresses the very issues that Mrs. Castellano addressed in her additional written argument.

Thus, for example, Mrs. Castellano argues that the 2009 Board did not address her argument that more probative weight should be granted to the VA chief psychiatrist's April 1999 opinion because of the doctor's status as chief psychiatrist and personal physician. Although the 2009 Board did not respond specifically as to the value of the doctor's status in its probative weight analysis, the Board addressed the probative value of the opinion vis-a-vis the other medical opinions and provided an adequate statement of reasons or bases for its assignment of weight to various opinions, which reflects an adequate discussion of the issue raised by Mrs. Castellano. *See Owens v. Brown*, 7 Vet.App. 429, 433 (1995) ("It is not error for the [Board] to favor the opinion of one competent medical expert over that of another when the Board gives an adequate statement of reasons [or] bases."); *see also Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court"). In sum, Mrs. Castellano fails to show by specific evidence that the Board did not consider her written arguments, and

17

fails to demonstrate that the Board's statement of reasons or bases is not understandable or in some way frustrates judicial review. *See Newhouse*, *Hilkert* and *Allday*, all *supra*.

## C.  Alzheimer's Disease

Mrs. Castellano further argues that the Board erred in finding Mr. Castellano's Alzheimer's disease not aggravated by his service-connected anxiety disorder.  In support of its decision, the Board noted, inter alia, that (1) a February 1996 medical report stated that Mr. Castellano's Alzheimer's brought out his psychiatric symptoms, but did not state that his psychiatric symptoms brought out his Alzheimer's, (2) an April 1996 medical report stated that Mr. Castellano's neuroses complicated his organic (personality) disorder and treatment, but did not state that the neuroses complicated Alzheimer's, (3) an April 1999 medical report stated that Mr. Castellano's psychiatric problems impacted his Alzheimer's, but such a statement was inconsistent with the earlier statement of the examiner in April 1996, and (4) a December 1999 medical report stated that anxiety does not cause Alzheimer's, and, although it also stated that anxiety can contribute to impaired functioning in individuals with Alzheimer's, "can" also implies "can not."  However, because the June 26, 2000, medical report may alter the Board's determination on this issue, remand is warranted. *See Arneson v. Shinseki*, 24 Vet.App. 379, 389 (2011) (remand warranted where error could have altered Board's determinations).

## D.  Bipolar Disorder

Mrs. Castellano further argues that the Board erred in finding that Mr. Castellano had no bipolar disorder.  Succinctly stated, remand is warranted for the Board to consider the June 26, 2000, medical report in its determination as to whether service connection for bipolar disorder or a higher rating for Mr. Castellano's mental condition is warranted. *See Arneson*, *supra*.

## E. SMC and TDIU

Because they are inextricably intertwined with the remanded matters, the issues of SMC and TDIU also will be remanded. *Cf. Tyrues v. Shinseki*, 23 Vet.App. 166, 178-79 (2009) (remand generally appropriate when matter on appeal is "inextricably intertwined" with matters being adjudicated below), *aff'd*, 631 F.3d 1380 (Fed. Cir. 2011), *vacated on other grounds*, 132 S. Ct. 75 (2011).

F. Remand

On remand, Mrs. Castellano may present, and the Board must consider, any additional argument in support of the matters remanded. *See Kay*, *supra*. These matters are to be provided expeditious treatment on remand in accordance with 38 U.S.C. § 7112.

**IV. CONCLUSION**

That part of the July 7, 2009, Board decision on appeal is SET ASIDE and the matters are REMANDED for further adjudication consistent with this opinion.

SCHOELEN, *Judge*, concurring: Although I fully agree with the majority that the Board decision should be vacated and the matter remanded for consideration of the June 26, 2000, VA medical report as "evidence in the file" at the time of the death of the veteran, Frederick C. Castellano, I write separately to address several concerns, including my disagreement with the majority's attempt, although through dicta, to deem *Hayes v. Brown,* 4 Vet.App. 353 (1993) overruled.

A. Evidence in the File at Date of Death

Pursuant to 38 U.S.C. § 5121(a), a veteran's surviving spouse may receive accrued benefits consisting of "periodic monetary benefits . . . to which [the veteran] was entitled at death under existing ratings or decisions, or those based on *evidence in the file at date of death* . . . and due and unpaid." 38 U.S.C. § 5121(a) (emphasis added). In *Hayes*, the Court noted that although section 5121(a) permits only evidence in the file at date of death, section 5121(c) "appear[ed] to contradict, or at least qualify, that provision" by permitting a claimant to submit information to complete the application. 4 Vet.App. at 360. Given this ambiguity, the Court stated that "the Secretary ha[d] wide latitude in establishing department policy as to what post-date-of-death evidence may be considered." *Id.* Noting that the regulatory framework established to implement section 5121(a), (c) was "confusing at best," *see* 38 C.F.R. § 3.1000(d)(4)(i)(1992),[9] the Court nevertheless stated that it was "clear" that § 3.1000(d)(4), "on

---

[9] In 1992, the Secretary's regulation, provided as follows:

> (4) *Evidence in the file at date of death* . . . will be considered to have been met when there is on file at the date of the veteran's death:
>
> (i) Notwithstanding § 3.200(b) evidence, including uncertified statements, which is essentially

19

its face, applie[d] only to evidence in the file at date of death and the death certificate and, d[id] not, by its terms contemplate the submission of any post-death evidence."[10]  *Id.* at 358. However, the Court also recognized that "[s]uperimposed on this regulation . . . [wa]s a confusing array of provisions of the VA Manual, M21-1 . . . scattered amongst two chapters, regarding what post-date-of-death evidence [wa]s acceptable."  *Id*. at 360 (citing VA Manual, M21-1, paras. 5.25, 27.08).  The Court held that "[t]o the extent that these Manual provisions affect what post-date-of-death evidence may be considered, they have '"the force of law" . . . [as they affect] a substantive right [of appellant to accrued benefits,] and . . . placement in a procedural [M]anual cannot disguise [the] true nature [of these provisions] as . . . substantive rule[s].'"  *Id.* (quoting *Fugere v. Derwinski*, 1 Vet.App. 103, 107 (1990)).

What is clear from the Court's decision in *Hayes*, is that *both* 1992 M21-1 provisions discussed by the majority, M21-1, part VI, para. 5.25(a), (b) (1992), were found to be "substantive rules," creating substantive rights, because they affected what post-date-of-death evidence could be considered under § 5121(a).  Thus, absent adherence to the APA notice-and-comment process and specific notice to the public of intent to revoke these substantive provisions, neither provision could be overturned.  *Fugere*, 1 Vet.App. at 109-10 (setting aside the Secretary's rescission of an M21-1 provision for failing to follow the APA notice-and-comment process), *aff'd*, 972 F.2d 331 (Fed. Cir. 1992).

As relevant to this appeal, paragraph 5.25(a) provided that "[e]vidence 'in file' includes . . . ['[r]eports of hospitalization, treatment or examinations authorized by VA'],  even if such reports are not reduced to writing or are not physically placed in file until after death.  M21-1, pt. VI, para. 5.25(a) (1992).  Paragraph 5.25(b), entitled "[e]vidence [e]ssentially [c]omplete," provided that

> [t]he provisions of 38 C.F.R. § 3.1000(d)(4) permit favorable action under
> 38 U.S.C. § 5121 on the basis of the evidence as a whole when the evidence is

---

complete and of such weight as to establish service connection or degree of disability for disease or injury when substantiated by other evidence in file at date of death or when considered in connection with the identifying, verifying, or corroborative effect of the death certificate.

38 C.F.R. § 3.1000(d)(4)(i) (1992).

[10]  Contrary to the majority's view, the Court in *Hayes* explicitly stated that "the exceptions provided for by ¶ 5.25(a), (b) are not set forth in . . . § 3.1000(d)(4)" and, therefore, did consider whether para. 5.25(a) and (b) could stand in direct contravention of the regulation.  *Id*. at 360; *see* section III.A.2.b, *ante* at 9.

> essentially complete and in file at the time of death. . . . The cited regulations also provide for the acceptance of evidence after death for verifying or corroborating evidence "in file" at death.

M21-1, pt. VI, para. 5.25(b) (1992). Because paragraph 5.25(b) explicitly referenced the Secretary's regulation, and paragraph 5.25(a) did not, my colleagues state that paragraph 5.25(a) does not "purport[] to be interpreting a regulation." *See* section III.A.2.b, *ante* at 9. In addition, because they perceive paragraph 5.25(b) to directly conflict with the Secretary's pre-2002 regulation, they conclude that the Secretary was permitted to amend the M21-1 provision without adhering to the notice and comment process. They assert that since *Hayes* issued, "it has been clarified that a properly promulgated regulation trumps an M21-1 provision or other VA directive that plainly is erroneous or inconsistent with regulation." Section III.A.2.b, *ante* at 9 (citing *Smith v. Shinseki*, 647 F.3d 1380 (Fed. Cir. 2011) and *Haas v. Peake,* 525 F.3d 1168, 1197 (Fed. Cir. 2008).

I disagree with the majority's classification of the two Manual M21-1 paragraphs because it is clear to me that *both* paragraph 5.25(a) and paragraph 5.25(b) reflect the Secretary's determination regarding what post-date-of-death evidence is to be considered "evidence in the file."[11] That paragraph 5.25(b) mentioned the regulation, and paragraph 5.25(a) did not, does not alter the fact that both paragraphs represented the Secretary's interpretation of 38 U.S.C. § 5121 and the evidentiary requirements for an accrued benefits claim, which the Secretary has conceded he had failed to establish by regulation *until* the 2002 regulatory change. The Secretary stated in his 2002 notice of proposed rulemaking that the then-current version of 38 C.F.R. § 3.1000(d)(4) failed to define the term "'evidence in the file'" but instead permitted VA "in certain instances . . . [to] accept identifying, corroborating[,] or verifying information from the death certificate *and* evidence submitted with the claim for accrued benefits to support prima facie evidence already in the file." *See* Evidence for Accrued Benefits, 67 Fed. Reg. 9638, 9639 (Mar. 4, 2002) (emphasis added). Moreover, the Federal Circuit's recent discussion of *Hayes* in *Hyatt v. Shinseki* recognized this Court's "perceived conflict between subsections (a) and (c) of § 5121" and that VA clarified this "confusion" by regulation in *2002*. 566 F.3d 1364,

---

[11] Indeed the plain language of paragraph 5.25(a) reveals that it is the Secretary's interpretation of what constitutes "evidence in the file." It states: "Evidence in File at Date of Death. Evidence 'in file' *includes* the following . . . ." M21-1, pt. VI, para. 5.25(a) (emphasis added); *see also* M21-1, pt. VI, para. 5.23 (1992) (stating that "[e]ntitlment to [accrued benefits] must be based on evidence in file at date of death" and referencing para. 5.25(a)).

1370 (Fed. Cir. 2009) (citing Evidence for Accrued Benefits, 67 Fed. Reg. 9638, 9639 (Mar. 4, 2002); Evidence for Accrued Benefits, 67 Fed. Reg. 65,707 (Oct. 28, 2002)). Thus, I believe that until 2002, when the Secretary formally published his intent to delete from the M21-1 those provisions that were inconsistent with his proposed definition of "evidence in the file at the date of death," both paragraph 5.25(a) and paragraph 5.25(b) remained valid substantive rules, which were applicable to the appellant's claim for accrued benefits filed in June 2000.

I also disagree with the majority's reliance on *Smith*, *Haas*, and *Fournier v. Shinseki*, 23 Vet.App. 480, 487-88 (2010), for the proposition that "a properly promulgated regulation trumps an M21-1 provision . . . that plainly is erroneous or inconsistent with regulation." *See* section III.A.1, *ante* at 6. Although it is true that the Federal Circuit concluded that Mr. Haas could not rely on a 1991 M21-1 provision that was inconsistent with the Secretary's regulation – *Haas* is distinguishable because the Secretary's regulation, which was promulgated after a notice-and-comment process, went into effect in July 2001, one month before Mr. Haas filed his claim for disability compensation benefits. 525 F.3d at 1196. Because the Secretary had "formally taken a position that excluded Mr. Haas from the scope of the regulation" before his claim was filed, the Federal Circuit concluded that (1) Mr. Haas could not rely on the 1991 M21-1 provision, which was inconsistent with the later regulation, and (2) it was unnecessary for the Agency to conduct parallel rulemaking to amend the Agency's "interpretative statement" contained in the M21-1. *Id*. at 1196-97.

Unlike the regulation in *Haas*, which was formally promulgated after the M21-1 provision had already been in effect, the pre-2002 version of 38 C.F.R. § 3.1000(d)(4) had been in effect since at least 1970, thus *pre-dating* the M21-1 provision at issue here, *and*, as acknowledged by the Secretary in his 2002 notice of proposed rulemaking, failed to give meaning to "evidence in the file at the date of death" and the ambiguity created by 38 U.S.C. § 5121(a), (c). *See* 38 C.F.R. § 3.1000(d)(4) (1970); 67 Fed. Reg. at 9639. As discussed earlier, the Court in *Hayes* recognized the ambiguity and confusion surrounding what constituted "evidence in the file at date of death" and held that, to the extent paragraph 5.25 "affected what post-date-of-death evidence may be considered" it had the "'force of law'" and created a "substantive right." *Hayes*, 4 Vet.App. at 360. In this circumstance, VA's regulation, which had

been effect since at least 1970, cannot "trump," or otherwise invalidate, a subsequently created "substantive right."

The majority's reliance on *Smith* and *Fournier*, both *supra*, is similarly misplaced because neither case involved a Manual M21-1 provision that created a substantive right. *See Smith*, 647 F.3d at 1384-85 (noting that VA's interpretative statement contained in its adjudication Manual was consistent with VA's TDIU regulation, which did not require the agency to consider the availability of work when determining entitlement to TDIU); *Fournier*, 23 Vet.App. at 487 (holding that the Manual M21-1 provision at issue did "not establish or alter the criteria for benefits but only illuminates a suggested procedural practice for VA adjudicators"). In *Fournier*, the Court also discussed the Federal Circuit's decision in *Haas* as indicating that "when an Agency's interpretation of a statute is *clear* from existing regulations, any discrepancy between M21-1 and the regulation 'does not confer any rights' on a claimant." 23 Vet.App. at 487 (2010) (emphasis added). As noted above, prior to 2002, the Secretary's interpretation of his statutory authority was anything but clear. *See Hyatt,* 566 F.3d at 1370; *cf. Hayes*, 4 Vet.App. at 361 (stating that "VA, at the earliest possible opportunity, may wish to clarify its policy as to what evidence submitted after death may be considered"); 67 Fed. Reg. at 9639.

For these reasons, I cannot agree with my colleagues' conclusion that the May 8, 2000, amendments to paragraph 5.25(b) were properly effectuated without adherence to the APA notice-and-comment process. Rather, I would conclude that the 1992 M21-1 provisions, specifically paragraph 5.25(a) and paragraph 5.25(b), remained valid substantive rules in accordance with the Court's decision in *Hayes* until 2002 when VA formally rescinded its Manual M21-1 provisions as "inconsistent" with the 2002 amendment to 38 C.F.R. § 3.1000(d)(4). *See* 67 Fed. Reg. at 9640, 65,707.

In addition to noting my fundamental disagreement with the majority's analysis on this point, I would be remiss if I neglected to point out that the majority's discussion concerning paragraph 5.25(b) is not necessary to its decision and, therefore, in my opinion, amounts to nothing more than dicta. *See* BLACK'S LAW DICTIONARY 465 (7th ed. 1999) (defining "judicial dicta" as "[a]n opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision"); *see also*

23

*Pelegrini v. Principi*, 18 Vet.App. 112, 130 (2004) (Ivers, J., concurring in part and dissenting in part) (noting that "'[t]he danger of . . . dicta is that, although theoretically and technically not binding, practically, they give the appearance of carrying the cloak of judicial acceptance'" (quoting *Lasovick v. Brown*, 6 Vet.App. 141, 153 (1994)). Simply put, once my colleagues concluded that the Board clearly erred when it determined that the June 2000 report did not constitute a "VA-authorized report of treatment" such that it was error not to deem the report "evidence in the file at date of death," it was unnecessary to consider, only to *reject*, the appellant's *alternative* argument that the report should be considered because it serves to "summarize, corroborate[,] and verify evidence in file at the date of his death." Appellant's Brief (Br.) at 11-13 (citing *Hayes*, 4 Vet.App. at 360-61 *and* noting that the Board *failed* to address this argument). Because discussion of paragraph 5.25(b) was not essential to the Court's disposition, it is axiomatic that the majority's "holding" that *Smith* and *Haas* overturned *Hayes* is not binding.

To the extent that the majority relies on its analysis of the Secretary's May 2000 change to paragraph 5.25(b), *see* M21-1, pt. VI, para. 5.06(d) (Change 73 - May 8, 2000) (stating that "[t]he cited regulation provides for the acceptance of evidence . . . when considered in connection with the identifying, verifying, or corroborative effect of the death certificate"), to remand the question whether the veteran's private nursing home records may be deemed evidence in the file at the date of death pursuant to paragraph 5.06(d), I also note that this argument was not raised by the parties. Instead, the appellant argued that the nursing home records were "treatment records created prior to the veteran's death and it is entirely unclear why such relevant treatment records were not considered part of the veteran's file." Appellant's Br. at 12 n.6 (citing *Hayes,* 4 Vet.App. at 360-61, for the proposition that "hospitalization and treatment records may be considered constructively part of the veteran's file on the date of death for the purposes of adjudicating an accrued benefits claims even if not placed in the veteran's file prior to death"). The Board's reasons were unclear because the Board summarily stated that "records from Silver Ridge Village *outside the period for which VA authorized and contracted for treatment* at that facility . . . cannot be considered in the context of the . . . appeal." R. at 8 (emphasis added). I do not believe that the appellant's "reasons or bases" allegation of error reasonably raised any alternative basis for consideration of the records *outside* the authorized

24

period, and as argued by the Secretary, the appellant has not identified any record that the Board purportedly failed to consider that weighs in favor of her claim. Secretary's Br. at 16-17. The majority's discussion in this regard can only be viewed as a misguided attempt to render its discussion of paragraphs 5.25(b) (1992) and 5.06(d) (2000) relevant and essential to the Court's disposition in order to reach a desired result – deeming *Hayes* overruled.

## B. The Majority's Review of the Board's Findings

As noted above, I agree that the June 26, 2000, report should be deemed evidence in the file at the time of the veteran's death and that this matter should be remanded to the Board for consideration of the report. I also agree that the basis for admitting the report is, as conceded by the parties, that it constitutes a VA-authorized report of treatment. However, I write separately on this point to express my concern regarding the majority's broad interpretation of the Secretary's M21-1 provision, which permitted "[r]eports of hospitalization, treatment[,] or examinations authorized by VA" to be considered "evidence 'in file' . . . even if such reports are not reduced to writing or are not physically placed in file until after death." M21-1, pt. VI, para. 5.25(a) (1992); *see also* M21-1, pt. VI, para. 5.06(c) (Change 73 - May 8, 2000). My concern is that my colleagues' conclusion that a VA-authorized report of treatment may be deemed evidence in the file, "no matter what form it took at the moment of the veteran's death," section III.A.3.a.(1), *ante* at 11, may suffer from the law of unintended consequences. That is, although it may not seem unreasonable, under the facts of this case, to deem a VA report of treatment that is reduced to writing five weeks after the veteran's death evidence in the file, the majority's holding appears to permit a VA report of treatment, that is requested and written many years after a veteran's death, to be deemed evidence in the file at the date of death. Such a broad interpretation of the Secretary's Manual M21-1 may have the unintended effect of opening Pandora's box, possibly leading to a development of evidence in an accrued benefits claim that is not contemplated by statute. My concerns are augmented by the fact that the Secretary's *current* Manual M21-1 contains a similar provision that requires VA reports of hospitalization, examination, or treatment to be placed in the claims file "even if they are not reduced to writing . . . until after death," and therefore, the majority's holding may not be limited only to those cases that have been pending prior to the Secretary's 2002 amendment to 38 C.F.R. § 3.1000(d) and rescission of paragraph 5.06(c). *See* M21-1MR, pt. VIII, chs. 3, 1.f (2010).

Rather than broadly construe the Secretary's Manual M21-1 provision, I would have reviewed the Board's factual findings concerning *when* the report was requested and prepared and concluded that the Board clearly erred when it failed to afford the appellant the benefit of the doubt. *See* 38 U.S.C. § 5107(b) ("When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant."); *Mariano v. Principi*, 17 Vet.App. 305, 313 (2003) (the Court reviews the Board's application of the benefit of the doubt rule under the "clearly erroneous" standard); 38 C.F.R. § 3.102 (2011) ("When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant."). In short, I agree with the appellant that the Board's conclusions concerning the preparation of the report are highly speculative and are not based on any affirmative evidence in the record.

In its decision, the Board found that the June 2000 treatment report was not requested or prepared prior to the veteran's death and, therefore, concluded that it could not be considered as part of the accrued benefits claim. The Board observed that the veteran died on May 18, 2000, and that the report, dated June 26, 2000, indicated that it was prepared at the request of the veteran's wife and veteran's service representative (VSR). The Board also acknowledged that the report was written in the present tense, which indicated that the physician thought the veteran was still alive. The Board stated that there was no evidence to indicate when the psychiatrist prepared the report, but expounded that assuming the veteran's wife requested the report, it was "*highly unlikely*" that the psychiatrist would have been asked to prepare the report prior to the veteran's death and have waited more than five weeks to reduce it to writing. R. at 10. Thus, the Board concluded that the benefit of the doubt was "not implicate[d]" in the absence of any evidence that the psychiatrist prepared the report before the veteran died. *Id.*

To the extent the VSR may have requested the report, the Board stated that "it is *reasonable to assume* that the VSR would have delayed the [June 15, 2000, hearing] until the psychiatrist's report was received," had it been requested before the veteran's death. *Id.* (emphasis added). Based on the foregoing, the Board found that "the VA psychiatrist's June 2000 report was not requested until after the representative's Informal Hearing Presentation,

26

dated June 15, 2000 – almost one month after the Veteran had died – and so, *a fortiori*, the psychiatrist's report could not have been prepared prior to his death."  R. at 11.

"The Board's task [is] to make findings based on evidence of record – not to supply missing facts."  *Beaty v. Brown*, 6 Vet.App. 532, 536-37 (1994) (holding that the Board's finding that "'with eye protection, these occupations ["farmwork and heavy equipment operation"] would still be feasible' ha[d] no evidentiary basis in the record" and was clearly erroneous); *see also Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that the Board clearly erred when it relied on its own medical speculation and noting that "[b]are assertions without identifying the underlying factual basis for the conclusion are not sufficient").  In this case, what is clear from the face of the report is that it is dated June 26, 2000, five weeks after the veteran's death, and that the veteran's wife and VSR requested the report.  However, the fact that the report postdates the veteran's death is not dispositive because the Secretary's Manual M21-1 provision clearly contemplates that evidence may be deemed in the file even though it is *not* reduced to writing until after death.  Thus, as conceded by the Board, it is "possible" that the report was "prepared" prior to the veteran's death, but not reduced to writing until after death.  R. at 10.  This possibility is bolstered by the fact that the VA doctor repeatedly referred to the veteran in the present tense, strongly suggesting that the physician believed that the veteran was alive when the report was prepared.  *See*, *e.g.*, R. at 333 ("The patient's *current* GAF (Global Assessment of Functioning) is scored as 25.") and ("The patient *is* totally and permanently disabled and *now* requires total nursing home care for supervision of his basic activities for daily living.  He may benefit from the use of medications to control his emotional outbursts, confusion and disorientation.  His prognosis *is* guarded.") (emphasis added).  On the other hand, there is no factual basis in the record to support the Board's conjecture that it is "*highly unlikely*" that it would take the physician more than five weeks to reduce a report to writing nor is there any basis for the Board's *assumptions* as to the VSR's thought process in preparing for and submitting an informal hearing presentation on June 15, 2000.

Once we remove the Board's speculative determinations concerning the timing of the preparation of the report and consider the evidence in the record, it is clear that the Board erred when it found that the benefit of the doubt was "not implicated."  This is precisely the scenario in which the determination as to *when* the report was prepared is "too close to call" and the benefit

of the doubt should have been afforded to the appellant. *See generally Ortiz v. Principi*, 274 F.3d 1361, 1365 (Fed. Cir. 2001) ("[T]he benefit of the doubt rule may be viewed as shifting the 'risk of nonpersuasion' onto the VA to prove that the veteran is not entitled to benefits."). Thus, I would have concluded that the Board clearly erred when it failed to afford the appellant the benefit of the doubt to conclude that the VA psychiatrist prepared the report prior to the veteran's death and, therefore, the report should be deemed "evidence in the file" even though it was not reduced to writing until after the veteran's death.

## C. Retroactive Application of 38 C.F.R. § 3.1000(d)(4)

The majority holds that the Board's application of § 3.1000(d)(4) was erroneous "because the regulation was not intended to be retroactive and its retroactive application has an impermissible retroactive effect." Section III.A.3.a.2, *ante* at 11. Although I generally agree that the Secretary's 2002 amendment to § 3.1000 was not intended to apply retroactively and that any such application would have an impermissible retroactive effect, I do not agree with the majority's analysis of the *Princess Cruises* factors. *See* section III.A.3.a.2, *ante* at 11-15; *Princess Cruises, Inc. v. United States,* 397 F.3d 1358, 1362-63 (Fed. Cir. 2005). I also do not believe that my colleagues' *Princess Cruises* analysis is necessary to the Court's disposition because the Secretary has not maintained that the regulation applies retroactively. *See generally* Evidence for Accrued Benefits, 67 Fed. Reg. 65,707 (Oct. 28, 2002) (indicating that the Secretary's amendment to § 3.1000 is effective "November 27, 2002"); Secretary's Br. at 14-15 (citing 38 C.F.R. § 3.1000 (1999) as the applicable version of the regulation). Assuming the Board applied the current version of the regulation, I agree that such application was erroneous.

Accordingly, for the foregoing reasons, I concur in the result reached by the Court, but must respectfully disagree with those portions of the majority's opinion discussed above. The Board's decision should be vacated and the matter remanded for the Board to consider the June 26, 2000, VA medical report.